**ORIGINAL**



### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

2005 SEP 16 P 4:07

|  |  |
|---|---|
| **BENNY L. WRIGHT and KATHERINE E. WRIGHT, as parents and next friend of JESSICA W., a minor child,** ) ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **vs.** ) ) | **CIVIL ACTION NO. 2:05cv699-T** |
| **THE CHILTON COUNTY BOARD OF EDUCATION, et al.,** ) ) ) | |
| **Defendants.** ) ) | |

### PLAINTIFFS' MEMORANDUM OF AUTHORITIES
### IN OPPOSITION TO MOTION TO DISMISS

#### Preliminary Statement

This memorandum brief is submitted in support of PLAINTIFFS' Response to DEFENDANTS' Motion to Dismiss. We respectfully submit that the central issue presented by DEFENDANTS' pending Motion to Dismiss which this Court is required to decide is very narrow and may be succinctly stated as follows: does this Court have subject matter jurisdiction to adjudicate PLAINTIFFS' judicial claims brought under The Individuals with Disabilities in Education Act (I.D.E.A.), 20 U.S.C.S. § 1400 et seg., where there has been no formal administrative review by the state education agency? We respectfully submit that the answer is "yes" based upon the unique factual history and procedural posture of this case.

### *Factual History*
### *and Procedural Posture*

PLAINTIFF JESSICA W. is a fourteen (14) year old little girl who is presently enrolled in the eighth (8) grade at Clanton Middle School in Clanton, Alabama. This school is administered and managed by THE CHILTON COUNTY BOARD OF EDUCATION. JESSICA suffers from a terminal disease known as cystic fibrosis and she has been diagnosed as terminally ill. Therefore, JESSICA is a handicapped child who is eligible for special education and related services under I.D.E.A. because her ability to learn is impacted by her health issues.

A school district is required by I.D.E.A. to develop and provide an Individualized Education Plan ("I.E.P.") for the benefit each disabled child enrolled in that school district. The I.E.P. contains statements concerning a disabled child's level of functioning, sets forth measurable annual achievement goals, describes the services to be provided by the school district, and establishes objective criteria for evaluating the child's progress. 20 U.S.C.S. § 1414(d)(1)(A). The I.D.E.A. establishes a series of elaborate procedural safeguards designed to ensure that the parents or guardian of a child with a disability are both notified of decisions affecting their child and are given an opportunity to object to these decisions. The I.E.P. must therefore be prepared by an I.E.P. Team, which consists of a representative of the school district, the child's teacher, the parents or guardian and, where appropriate, the child herself. 20 U.S.C.S. § 1414(d)(1)(B). If the parents or guardian are not satisfied with the I.E.P. they are entitled to request a due process hearing presided over by a hearing officer or administrative law judge. Thereafter, any party aggrieved by

2

the findings and decision of the reviewing officer may then bring suit in United States

District Court whereby the District Court conducts a modified de novo review.  The Court

receives the records of the administrative proceedings, has discretion to hear additional

evidence, and renders it's decision on the preponderance of the evidence. **_Walker County_**

**_Sch. Dist. v. Bennett_**, 203 F. 3d 1293 (11th Cir: 2000).

In the matter at bar PLAINTIFFS allege that there has been a total and utter failure

on the part of THE CHILTON COUNTY BOARD OF EDUCATION to comply whatsoever

with any of the provisions of I.D.E.A.   The DEFENDANTS adamantly refuse to even

evaluate JESSICA which they are required to do under I.D.E.A.   PLAINTIFFS have

repeatedly requested that the child be evaluated.  The DEFENDANTS refuse.  They also

refuse to plan and develop an I.E.P. for JESSICA.  They even refuse to establish an I.E.P.

Planning Committee for JESSICA.  In bringing this action PLAINTIFFS are not seeking

judicial review of administrative findings because the appropriate officials of the Board of

Education have refused to make any findings.  There is thus no outcome or administrative

decision under the I.D.E.A. from which to appeal; there is no decision by a hearing officer

nor an administrative record here.  There is no administrative evidence to be offered and

no agency decision-maker to appeal from.  Therefore, in brining this suit under I.D.E.A. we

invoke one or more of the exemptions to the usual requirement of exhaustion of

administrative remedies because the DEFENDANTS have acted in bad faith and with

gross misjudgment.

We contend that JESSICA cannot benefit from the education she is presently

receiving because school officials refuse to accommodate her special needs by formulating

an I.E.P. Without an I.E.P. there is no process by which JESSICA can receive services or accommodations for her special needs which have been brought on by her terminal illness. Ideally an I.E.P. for a child with cystic fibrosis would accommodate the child's special needs in a number of ways. An I.E.P. would allow the child to carry enzyme pills to school for consumption during the course of the school day. Children with C.F. suffer from enzyme deficiencies. A child with C.F. also needs to be seated in class away from other schoolchildren who are sick. This is because C.F. patients have a compromised immune system. Without an I.E.P. JESSICA'S teacher can seat her wherever he wants. A child with C.F. has to make frequent trips to the bathroom because she must drink lots of fluids. Under an I.E.P. the child would be authorized to get up out of her seat and go to the bathroom without getting permission from the teacher. An I.E.P. for a child with C.F. may also include the administration of medication by the school nurse, special tutoring for the child, and the issuance of a second set of textbooks for the child's use at home.

In sum, this lawsuit has been filed as a result of the DEFENDANTS' failure to develop and implement an I.E.P. for little JESSICA, which has deprived her of the education that she and her parents desire for her to obtain.

### Introduction to Argument

The essence of DEFENDANTS' argument in support of their Motion to Dismiss is that PLAINTIFFS can only bring this action under I.D.E.A. by way of an appeal to U.S. District Court from the adverse decision of an administrative hearing officer. This general principle is illustrated by the following description of how most civil actions brought under

4

*the I.D.E.A. normally are presented to the District Court:*

> *"The modus operandi of the Act is the already mentioned 'individualized educational program.' The IEP is in brief a comprehensive statement of the educational needs of a handicapped child and the specially designed instruction and related services to be employed to meet those needs. § 1401(9). The IEP is to be developed jointly by a school official qualified in special education, the child's teacher, the parents or guardian, and, where appropriate, the child. In several places, the Act emphasizes the participation of the parents in developing the child's educational program and assessing its effectiveness . . . Apparently recognizing that this cooperative approach would not always produce a consensus between the school officials and the parents, and that in any disputes the school officials would have a natural advantage, Congress incorporated an elaborate set of what it labeled 'procedural safeguards' to insure the full participation of the parents and proper resolution of substantive disagreements. Section 1415(b) entitles the parents 'to examine all relevant records with respect to the identification, evaluation, and educational placement of the child,' to obtain an independent educational evaluation of the child, to notice of any identification, evaluation, or educational placement of the child, and to present complaints with respect to any of the above. The parents are further entitled to 'an impartial due process hearing' . . . to resolve their complaints . . . The Act also provides for judicial review in state or federal court to '[a]ny party aggrieved by the findings and decision' made after the due process hearing.' "*

__*Burlington School Comm. v. M.A. Dept. of Education,*__ *471 U.S. 359, 407, 85.L.Ed 2d*

*385, 394, 105 S. Ct. 96, 104 (1985).*

    *In the matter at bar no such issues are presented because the gist of our complaint*

*is that school officials have wilfully and in bad faith refused to comply with even the minimal*

*provisions of I.D.E.A. in any fashion whatsoever and, therefore, there is no administrative decision to appeal from. Indeed, insofar as we can tell all or substantially all of the reported United States District Court jurisprudence in Alabama involves cases where there is an appeal to the district court, pursuant to the provisions of I.D.E.A., seeking judicial review of some underlying administrative decision or determination made concerning the handicapped child's educational needs. See, e.g., **Myles S. By and Through S.S. v. Montgomery County Bd. of Educ.**, 824 F. Supp. 1549 (M.D.Ala. 1993); **Andalusia City Board of Education v. Andress**, 916 F. Supp. 1179 (M.D. Ala. 1996); **Chris D. v. Montgomery County Bd. of Educ.**, 753 F. Supp. 922 (M.D. Ala. 1990); **W.T. by Tatum v. Andalusia City Schools**, 977 F. Supp. 1437 (M.D. Ala. 1997); **W.L.G. v. Houston County Board of Educ.**, 975 F. Supp. 1317 (M.D. Ala. 1997); **E.D. ex rel. Dukes v. Enterprise City Bd. of Education**, 273 F. Supp. 2d 1252 (M.D. Ala. 2003); **Maricus W. ex rel. Marvin M. v. Lanett City Bd of Educ.**, 142 F. Supp. 2d 1327 (M.D. Ala. 2001); **Doucet ex rel. Doucet v. Chilton Co. Board of Educ.**, 65 F. Supp. 2d 1327 (M.D. Ala. 1999); **Dickerson ex rel. Ingram v. Brogden**, 80 F. Supp. 2d 1319 (S.D. Ala. 1997); and **Tribble v. Montgomery Co. Bd. of Educ.**, 798 F. Supp. 668 (M.D. Ala. 1992). Therefore, PLAINTIFFS' argument(s) herein place great reliance on authorities from other United States District Courts and from U.S. Courts of Appeals other than the Eleventh Circuit. Several of these cases were decided by Your Honor, Judge Thompson.*

### STANDARD OF REVIEW

*The threshold that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low. **Lewis v. Board of Trustees of Alabama State***

6

***University***, 874 F. Supp. 1299 (M.D.Ala. 1995).  Pursuant to Rule 12(b)(6), <u>Federal Rules</u>

<u>of Civil Procedure</u>, a complaint should not be dismissed for failure to state a claim unless

it appears beyond doubt that the PLAINTIFF can prove no set of facts which would entitle

her to relief. ***Cannon v. Macon County***, 1 F. 3d 1558, <u>opinion modified on rehearing in</u>

<u>part</u>, 15 F. 3d 1022 (11th Cir. 1993).  The principle is illustrated by the decision of ***Huckaby***

***v. East Alabama Medical Center***, 830 F. Supp 1399:

> "When considering a motion to dismiss for failure to state
> a claim, the court must assume that the factual
> allegations in the complaint are true. ***Neitzke v.***
> ***Williams***, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d
> 338 (1989).  Assuming that the facts are true, a
> complaint may be dismissed under Fed.R.Civ.P. 12(b)(6)
> only 'if it is clear that no relief could be granted' under
> any set of facts that could be proved consistent with the
> allegations. ***Hishon v. King & Spalding***, 476 U.S. 69,
> 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)."

830 F. Supp at 1401 (M.D. Ala. 1993).  The law is thus quite clear that a motion to dismiss

for failure to state a claim questions the legal sufficiency of a complaint and, therefore, in

assessing the merit of the motion, the district <u>must</u> <u>assume</u> that all factual allegations set

forth in the complaint are true. ***Mays v. U.S. Postal Service***, 928 F. Supp 1552 (M.D. Ala.

1996)(emphasis supplied).

Moreover, it has been explicitly held that if information set forth in a complaint does

not adequately appraise the defendant of the nature of plaintiff's claims, the trial court

should allow the plaintiff to amend the pleadings to more plainly delineate a cause of action

rather than dismiss the complaint. ***Sarter v. Mays***, 491 F. 2d 675 (5th Cir. 1974).  This is

particularly so with respect to actions brought under 42 U.S.C. § 1983.  <u>See</u>, ***LaFleur v.***

*__Wallace State Community College__*, 955 F. Supp. 1406 (M.D. Ala. 1996); *__Ross v. State__*

*__of Alabama__*, 893 F. Supp. 1545 (M.D. Ala. 1995). *While our position, which we hereby*

*reserve, is that our complaint adequately provides the Defendants with sufficient notice of*

*the nature of the PLAINTIFFS' claims, we submit in the alternative that PLAINTIFFS should*

*be permitted to amend their complaint in the event that this Court should determine*

*otherwise.*


## *__ARGUMENT__*

### *I.*    *__DEFENDANTS' ARGUMENT THAT PLAINTIFFS HAVE FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES IS SPECIOUS BUT IT MUST FAIL BECAUSE IT DOES NOT ADDRESS THE LEGALLY RECOGNIZED EXCEPTIONS.__*

*The DEFENDANTS contend that PLAINTIFFS have failed to exhaust their*

*administrative remedies and that Counts 1 and 2 of the complaint, based on violations of*

*the I.D.E.A., are therefore due to be dismissed. The gist of their argument is that this Court*

*lacks subject matter jurisdiction, under both I.D.E.A. and 42 U.S.C. Section 1983, because*

*of PLAINTIFFS' failure to exhaust administrative remedies. We submit that this argument*

*is specious but it is due to fail because it does not address the various legally recognized*

*exceptions to the exhaustion of administrative remedies rule. See, e.g. __Honig v. Doe__, 108*

*S. Ct. 592, 484 U.S. 305, 98 L.Ed. 2d 686 (1988).*

*Ordinarily state administrative procedures must be exhausted before a judicial*

*action under I.D.E.A. may be commenced. 20 U.S.C.A. § 1415(i)(2)(1); __Dubois v.__*

*__Connecticut State Board of Education__, 727 F. 2d 44 (2nd Cir. 1984); __Donoho ex rel.__*

8

*Kemp v. Smith County Board of Education*, 21 Fed. Appendix 293 (6th Cir: 2001).

However, failure to exhaust administrative remedies may be excused where it would be

futile to use the procedures, where the agency has adopted a policy or pursued a practice

that it is contrary to law, or where it is improbable that adequate relief could be obtained

by pursuing administrative remedies. *Schlude v. Northeast Central School District*, 892

F. Supp. 560 (S.D.N.Y. 1995); *M.M ex rel. D.M. v. School District of Greenville County*,

303 F. 3d 523 (4th Cir: 2002). Therein it was explicitly held that:

> "It is clear that, under the IDEA, parents asserting a
> violation of the IDEA must first request a due process
> hearing. 20 U.S.C. § 1415(f). The courts have
> recognized only three narrow exceptions to this
> exhaustion requirement, each arising largely out of the
> legislative history of the IDEA: (1) when the
> administrative process would have been futile; (2) when
> a school board failed to give parents proper notification
> of their administrative rights; or (3) when administrative
> exhaustion would have worked severe harm upon a
> disabled child. *See*, *e.g.*, *Hoeft v. Tucson Unified Sch.*
> *Dist.*, 967 F. 2d 1298, 1303-04 (9th Cir. 1992); *Koster*
> *v. Frederick County Bd. of Educ.*, 921 F. Supp. 1453,
> 1455 (D. Md 1996)."

303 F. 3d at 536. *See also*, *Birmingham v. Omaha*, 220 F. 3d 850 (8th Cir: 2000)(a

plaintiff may bring a claim under I.D.E.A. where exhaustion of administrative remedies

would be futile). The PLAINTIFFS' complaint clearly satisfies all of the elements necessary

to state a claim under I.D.E.A. At paragraphs 23, 24 and 25 of the complaint PLAINTIFFS

allege that the DEFENDANTS have refused to provide JESSICA, a disabled child, with an

appropriate and fully integrated public education as required by I.D.E.A.. Therein we

complain that the DEFENDANTS have failed and refused to plan and develop an Individual

Education Plan for JESSICA as required by I.D.E.A.   At paragraph 24 of the complaint we specify with particularly the special services and accommodations which a child with C.F. should receive pursuant to an I.E.P.    At paragraph 30 we aver that the DEFENDANTS refusal to comply with I.D.E.A. has had the effect of denying little JESSICA access to the educational opportunities provided by her school and/or the benefits of the educational programs operated by the Board.    At paragraph 25 we aver that the child's parents have asked CHILTON COUNTY SCHOOL OFFICIALS to comply with I.D.E.A. by planning and implementing an I.E.P. for little JESSICA.  Not only have the officials refused but in  doing so some of them have uttered insults at a little girl who is dying from cystic fibrosis.  *See*, *e.g.* paragraph 25 of the complaint.  Clearly then it would be futile for PLAINTIFFS to continue to make requests to school officials for administrative relief under these facts and circumstances.   Moreover, the exhaustion requirement is not jurisdictional and therefore is not to be applied inflexibly.  ***Ass'n for Retarded Citizens of Alabama v. Teague***, 830 F. 2d 158 (11th Cir: 1987).

Based on the foregoing, it is abundantly clear that in this matter exhaustion of administrative remedies is not required because it would be futile and woefully inadequate to protect Jessica's rights.   Moreover, PLAINTIFFS' cannot exhaust administrative remedies when the DEFENDANTS refuse to even perform their own administrative functions under I.D.E.A.  In addition thereto, exhaustion should not be required because PLAINTIFFS were not given full notice of their procedural rights under I.D.E.A.

II.    ***DEFENDANTS' ARGUMENT THAT CLAIMS UNDER I.D.E.A. CANNOT BE BROUGHT AGAINST INDIVIDUAL DEFENDANTS MUST FAIL AS UNSOUND AND UNSUPPORTED.***

*DEFENDANTS contend that PLAINTIFFS' I.D.E.A. claims against the individual school board members and officials fail to state a claim against those DEFENDANTS upon which relief can be granted, and that the I.D.E.A. claims against those individuals are due to be dismissed. We submit that this argument is due to fail as unsound and unsupported.*

*Under the I.D.E.A. a court may grant any relief that the court deems appropriate. 20 U.S.A. § 1451(e)(2). This relief may include an award of attorney fees, an award of costs, punitive damages, and injunctive relief. 20 U.S.C.A. § 1451(e)(4)(B); **Bailey v. District of Columbia**, 839 F. Supp 888 (D.C. Dist. Col: 1993); and **Mason by and Through Mason v. Schenectady City School District**, 879 F. Sup 215 (D.C. New York 1993). Other remedies include reimbursement to parents for private school placement or out-of-pocket expenses, payment of compensatory education, civil liability against the offending state, and loss of federal assistance to the offending state. **School Committee of Burlington v. Department of Education**, 471 U.S. 359, 85 L. Ed 2d 385, 105 S. Ct. 1996 (1985); **Jefferson County Bd. of Education v. Breen**, 853 F 853, rehearing denied en banc, 864 F. 2d 795 (11th Cir: 1988); **Murphy v. Timberlane Regional School District**, 22 F. 3d 1186 (First Cir: 1994) and **Wirta v. District of Columbia** 859 F. Supp 1 (D.C. Dist. Co: 1994).*

*Since 1986, the Individuals with Disabilities Act (IDEA), which generally provides that all children with disabilities have a right to a free appropriate public education, has*

contained a non-exclusivity provision. This provision states that the I.D.E.A. is not to be construed so as to restrict or limit the rights, procedures, and remedies available under other Federal statutes protecting the rights of children and youth with disabilities. 20 U.S.C.A. § 1415(b)(2)(c) and § 1415(f). Thus, an action may be brought under 42 U.S.C. § 1983 to enforce I.D.E.A. rights, and the District Court has discretion to fashion an appropriate remedy, including monetary damages and compensatory education. **_W.B. v. Matula_**, 67 F. 3d 484 (3rd Cir: 1995); **_Crocker v. Tennessee Secondary Sch. Athletic Ass'n_**, 980 F, 2d 382 (6th Cir: 1992). In additional thereto, we allege that the collective DEFENDANTS, and each of them, have all acted in bad faith with respect to their violations of the I.D.E.A.


### III.    _DEFENDANTS' ARGUMENT THAT OUR CLAIMS BROUGHT UNDER SECTION 1983 ARE DUE TO BE DISMISSED IS WITHOUT SUBSTANCE AND IT IS DUE TO FAIL AS A MATTER OF LAW._

DEFENDANTS argue that an action brought pursuant 42 U.S.C. Section 1983 is unavailable for PLAINTIFFS' claims under I.D.E.A. DEFENDANTS contend that PLAINTIFFS are attempting to circumvent the requirement of exhaustion of administrative procedures provided for in the I.D.E.A. We submit that this argument is without substance and it is due to fail as a matter of law.

The language of I.D.E.A. itself makes it abundantly clear that the act does not provide the exclusive avenue for redress available to children with disabilities. 20 U.S.C.A. § 1415(f). § 504 of the Rehabilitation Act, 29 U.S.C.A. § 794, as well as 42 U.S.C. Section

*1983, may be used to enforce I.D.E.A. educational rights. Thus, an action may be brought under 42 U.S.C. Section 1983 to enforce I.D.E.A. rights, and the District Court has discretion to fashion an appropriate remedy, including monetary damages and compensatory education.  **W.B. v. Matula**, supra. See also, **McCachren v. Blacklick Valley School District**, 217 F. Supp. 2d 594 (W.D. Pa 2002)(held that high school students and their parents could bring Section 1983 action seeking compensatory and punitive damages for alleged violations of I.D.E.A. without first exhausting administrative remedies, the exhaustion requirement applying only to requests for relief other than damages); **Vultaggio ex rel. Vultaggio v. Bd. of Educ. of Smithtown Central School Dist.**, 216 F. Supp. 2d 96 (E.D. NY 2002)(retaliation claims against school officials available under I.D.E.A. may be brought under Section 1983); **Eddins v. Excelsior Indep. School Dist.**, 88 F. Supp. 2d 695 (E.D. Texas 2000)(Section 1983 may be used to enforce federal substantive rights that are established in a favorable I.D.E.A. administrative decision when the statute or state law lacks a specific enforcement provision); **A.A. v. Bd of Educ. of Central Islip Union Free School Dist.**, 255 F. Supp. 2d 119 (E.D. NY 2003)(a plaintiff may enforce I.D.E.A. rights granted by way of action brought pursuant to Section 1983); and **Birmingham v. Omaha School Dist.**, 220 F. 3d 850 (8th Cir: 2000)(a Section 1983 complaint seeking damages, reasonable attorney's fees, costs, and "any other relief that the Court deems just and proper" for alleged I.D.E.A. violations did in fact state a claim upon which relief could be granted).*

*We would submit that our complaint satisfies all of the necessary elements to sustain a claim under 42 U.S.C.S. Section 1983.  At paragraphs 42, 43, 44, and 45 of the*

complaint the PLAINTIFFS have pled with particularity that little JESSICA'S rights to personal safety, security, privacy and health, as guaranteed to her by I.D.E.A. based upon the due process clause and equal protection clause of the Fourteenth Amendment, as it is enforced under 42 U.S.C. Section 1983, have been violated by the educator defendants. By refusing to implement an I.E.P. for JESSICA the DEFENDANTS are depriving her of her I.D.E.A. rights without first affording her due process of law. The DEFENDANTS are also violating little JESSICA'S equal protection rights because there are other handicapped children in the CHILTON COUNTY SCHOOL SYSTEM who are receiving benefits and services under the I.D.E.A. at the same time that those benefits and services are being denied to JESSICA. The term "disparate treatment" clearly applies to our equal protection claim. Moreover, and for purposes of "official policy" liability under Section 1983, we have made specific allegations that one or more of the individual educator DEFENDANTS, as official policymakers, have been aware of the deprivation(s) of JESSICA'S Fourteenth Amendment rights but failed to stop them. See, e.g., paragraphs 8 through 17 and paragraphs 43, 44, and 45 of the complaint. In the decision of **_Monell v. Dept. of Social Services_**, 436 U.S. 658 (1978), the Supreme Court held that "[i]n order to state a claim under § 1983 against a local governing body, a plaintiff must allege that she suffered a constitutional injury, and that her injury was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers." _See_, **_Monell_**, 436 U.S. at 690. Therefore, a local government may be held liable under § 1983 only for acts for which it is actually responsible, "acts which the [local government] has officially sanctioned or ordered." _See_, **_Pembaur v. City of Cincinnati_**, 475 U.S. 469, 479-

14

80 (1986).  The PLAINTIFFS make these allegations at paragraphs 8 through 17 and paragraphs 43, 44, and 45 of the complaint.

IV.    **PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ARE NOT REDUNDANT OF THEIR CLAIMS AGAINST THE CHILTON COUNTY B.O.E. BECAUSE THOSE DEFENDANTS ARE LIABLE FOR DAMAGES, IF AT ALL, ONLY IN THEIR INDIVIDUAL CAPACITIES.**

DEFENDANTS next contend that PLAINTIFFS' claims against the individual educator defendants are due to be dismissed because those claims are redundant of the claims which have been brought against The Chilton County Board of Education.   We disagree.  Since claims for punitive damages may not be asserted against a government entity or an individual sued in their official capacity, our claims for punitive damages can only be assessed if the educator defendants can be held liable in their individual capacities.  **City of Newport v. Fact Concerts**, 453 U.S. 247 (1981) The individual educator DEFENDANTS imply that they are immune from suit under the doctrine of qualified immunity.

Qualified immunity was first enunciated in **Harlowe v. Fitzgerald**, 457 U.S. 800, 815-19 (1982).  Under **Harlowe**, an official who was performing a discretionary function was entitled to qualified immunity if his conduct did not violate "a clearly established constitutional or statutory right of which a reasonable person would have known." **Harlowe** at 818.  In **Anderson v. Creighton**, 483 U.S. 635 (1987), the Court indicated that the "contours" of the asserted constitutional or statutory right must be sufficiently clear to give an official notice that his or her conduct was unlawful.  The applicability of qualified

15

immunity in a particular case is a question of law to be properly decided by the Court. **_Mitchell v. Forsythe_**, 472 U.S. 511 (1985). Qualified immunity is designed to protect all but the plainly incompetent or those who knowingly violate the law. **_Malley v. Briggs_**, 475 U.S. 335 (1986).

In **_Lassiter v. Alabama A&M University_**, 28 F. 3d 1146 (Cir. 1994)(en banc), the Eleventh Circuit Court of Appeals discussed the guiding principles of qualified immunity. In discussing these guiding principles, the Court discussed the basic question of when is a law "clearly established." The Court held that for a law to be clearly established to the point that qualified immunity would not apply, the law must have been developed in such a concrete and factually defined context as to make it obvious to all reasonable government actors that what is being done violates federal law. **_Lassiter_** at 1149. Importantly, the Court discussed the need that the law be clearly established on the definite point so that qualified immunity would not apply, basing this need on the fact that qualified immunity usually protects government actors sued in their individual capacities. Only in exceptional cases are government officials not protected against claims against them made in their individual capacities. _Id_ at 1149. We respectfully submit that the matter at bar constitutes one of those exceptional cases.

The tenet of sufficient clarity has been further elucidated by the Court of Appeals. Determining whether the PLAINTIFF has proven this clearly established requirement, the Court must make a determination whether a violation of a clearly established constitutional right has been alleged employing a fact-specific inquiry to ascertain whether "there existed sufficient case law establishing the contours of [PLAINTIFF'S] constitutional rights such

that the unlawfulness of the DEFENDANT'S conduct would have been apparent to a reasonable official in the same circumstances . . . if no such case law exists, then the DEFENDANT in entitled to qualified immunity." **Belcher v. City of Foley**, 30 F. 3d 1390, 1395 (11th Cir 1994)(internal citations omitted). This brief cites a plethora of judicial decisions which clearly establish the DEFENDANTS' obligations to Jessica under the I.D.E.A. Moreover, the Chilton County Board of Education is well aware of it's duties under the I.D.E.A. because it has been found guilty of breaching those duties in the past. See, e.g., **Doucet v. Chilton Co. Board of Educ.**, supra.

We submit that the issues raised by the dismissal motion with respect to qualified immunity are best addressed on a summary judgment motion and any consideration thereof at this point should be pretermitted until the discovery process is completed.

### V.    DEFENDANTS' ARGUMENT THAT THEIR ACTS DO NOT SATISFY THE REQUIRED ELEMENTS OF THE TORT OF OUTRAGE IS NOT RIPE FOR DETERMINATION.

DEFENDANTS contend that the tort of outrage is not a cognizable claim under the facts of this case and that the elements of the tort of outrage are not satisfied by the allegations in the PLAINTIFFS' complaint. We submit that this issue is also one which is best addressed on a motion for summary judgment and it is therefore not ripe for review.

The elements of the action for outrage may be succinctly stated as follows:

> *"(1) That the actor intended to inflict emotional distress or should have known that it would result; (2) that the conduct was extreme and outrageous; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress of the plaintiff was severe."*

*__U.S.A. Oil v. Smith__, 415 So. 2d 1098 (1982). The wrong is the doing of some act that is so traumatic that it causes a physical or personal injury to another. Id. The tort may be stated thusly: it is the intentional infliction of emotional distress. __Vincent v. Blue Cross__, 33 So. 2d 1054 (1979). The tort will lie where an employer has treated the employee with conduct of an extreme nature which causes emotional distress that no reasonable person can be expected to endure. __American Road v. Inmon__. 394 So. 2d 361 (Ala. 1981); __Rice v. United Insurance Co. of America__, 465 So. 2d 1100 (1984). It is axiomatic that the tort of outrage requires proof of conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. (Id.)    In the complaint in the matter at bar PLAINTIFFS clearly and unambiguously state that they have suffered emotional distress. It is therefore a question of fact for the jury to determine whether the conduct and actions of the DEFENDANTS rise to the level of outrage, and whether the emotional distress suffered by the PLAINTIFFS was so extreme that no reasonable person could be expected to endure it. Again, the appropriate DEFENDANTS are liable for monetary damages, if any are awarded at all, only if they are sued in their individual capacities.*

*Our outrage claim is predicated in part upon certain verbal harassment visited upon little JESSICA and her mother by DEFENDANTS ELLISON and FINLAYSON. This*

includes but is not limited to the following: (i) DEFENDANT FINLAYSON'S statement to JESSICA (a terminally ill child) that "if you are going to be sick all the time, and you are going to be such a 'teaty baby' you need to stay at home; (ii) DEFENDANT FINLAYSON'S statement to JESSICA (a terminally ill child) that, "I am tired of you using your illness as an excuse to miss class;" and (iii) DEFENDANT FINLAYSON'S statement to PLAINTIFF KATHERINE WRIGHT that, "just because you are a substitute teacher, I do not want her [JESSICA] taking advantage of that and missing class just to hang around with you." See e.g. paragraph 52 of the PLAINTIFFS' complaint. It is difficult for this writer to perceive any more compelling set of circumstances which would have the potential to cause someone extreme emotional distress which no reasonable person could be expected to endure. We submit, therefore, that the PLAINTIFFS' outrage claims give rise to a genuine issue of material fact which is due to be resolved by the jury.

### VI.   DEFENDANTS' ARGUMENT THAT PLAINTIFFS' STATE-LAW TORT CLAIMS ARE BETTER SUITED FOR STATE COURT CONSTITUTES A BLATANT ATTEMPT AT FORUM SHOPPING.

We submit that there is no legal basis for DEFENDANTS' argument that PLAINTIFFS' state-law tort claims should be litigated in state court instead of the United States District Court. In fact, the argument borders on an attempt at forum shopping. Counts One and Two of the complaint, brought pursuant to 20 U.S.C.S. § 1400 et seq. and 42 U.S.C. Section 1983, undeniably create a basis for Federal jurisdiction because they arise under the Constitution and laws of The United States. The remaining counts of the complaint are brought under the pendent and supplemental jurisdiction of the Court.

19

Therein, PLAINTIFFS seek to hold DEFENDANTS liable under State law for various acts and omissions of the DEFENDANTS which arise out of the same nucleus of operative facts as PLAINTIFFS' Federal claims. PLAINTIFFS should not be required to litigate their state-law tort claims in state court while at the same time they are litigating the same factual and legal issues in a proceeding in the U.S. District Court. This could lead to inconsistent results and conflicting determinations of law. All claims of law and fact arising out of the same transaction should be settled in one proceeding. Moreover, what is being proposed by the DEFENDANTS would be violative of § 6-5-440, Code of Alabama 1975, which provides that "[n]o plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case the defendant may require the plaintiff to elect which he will prosecute . . ." It has been explicitly held that the term "courts of this state" as used in Section 6-5-440 includes the United States District Courts in Alabama. **Terrell v. Bessemer**, 406 So. 2d 337 (Ala. 1981).

## VII.  PLAINTIFFS' STATE LAW CLAIMS BROUGHT AGAINST THE INDIVIDUAL DEFENDANTS ARE NOT DUE TO BE DISMISSED BECAUSE A PERSON'S MERE STATUS AS A STATE OFFICIAL DOES NOT AUTOMATICALLY CLOAK HIM OR HER WITH THE STATE'S SOVEREIGN IMMUNITY.

It is axiomatic that a defendant's mere status as a state official or public employee does not automatically cloak him or her with the state's constitutional immunity. **Phillips v. Thomas**, 555 So. 2d 81 (Ala. 1989). Moreover, the applicability of the doctrine of discretionary function immunity to a government employee's sovereign immunity claim must

be determined on a case-by-case basis, and it is a question of law to be decided by the trial court. *Ryans v. Hayes*, 831 So. 2d 21 (Ala. 2002). For the reasons set forth hereinbelow we submit that the DEFENDANTS' Motion(s) to Dismiss are due to be denied. The essence of our argument is that the DEFENDANTS have all acted illegally, fraudulently, in bad faith, beyond the scope of their authority, or under a mistaken interpretation of law. DEFENDANTS are therefore not immune from suit because their misconduct falls under one or more of these recognized exceptions to the doctrine(s) of immunity as discussed hereinbelow.

Article I, Section 14, Constitution of Alabama of 1901, provides that "the State of Alabama shall never be made a defendant in any court of law or equity." It is thus axiomatic that the State and it's agencies have absolute immunity from suit in any court under this provision. *Barnes v. Dale*, 530 So. 2d 770 (Ala. 1988). State officers and employees, in their official capacities and individually, are absolutely immune from suit when the action is, in effect, one against the State. *Barnes*, id. It is singular to note, however, that no state officer or employee can escape individual tort liability by arguing that his "mere status as a state official cloaks him with the state's constitutional immunity." *Phillips*, 555 So. 2d at 83. A state employee is not protected by Article I, Section 14 when he acts "willfully, maliciously, illegally, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of law." Id. In the case at bar, the dispositive issues concerning sovereign immunity are: (1) whether the **PLAINTIFFS**' claims against the **DEFENDANTS** are in effect, claims against the State and, if not, (2) whether any of the **DEFENDANTS** are entitled to sovereign immunity because they were engaged in the exercise of a discretionary

21

public function. To determine whether the action is, in effect, one against the State, a court must consider such factors as the nature of the action and the relief sought. ***Phillips***, *supra*, 555 So. 2d at 81. Article I, Section 14 prohibits suits against state officers and employees in their official capacity when a result favorable to the plaintiff would directly affect a contract or property right of the State. ***Milton v. Espey***, 356 So. 2d 1202 (Ala. 1978). We submit that an action for negligent/wanton supervision by supervisory officials of their subordinate employees is not within the ambit of Section 14 protection. Such a claim, by virtue of it's nature and the relief demanded, in no way seeks to circumvent the prohibition of Section 14. *See*, ***DeStafney v. University of Alabama***, 413 So. 2d 391, 395 (Ala. 1981) (personal injury action against individual state employees not within the protection of Section 14); ***Ryans v. Hayes***, *supra* (state prison officials and prison guards liable for negligence/wantonness as well as negligent/wanton supervision for injuries inflicted upon citizens by escaped inmates); and ***Ex Parte Cranman***, *supra* (University of Alabama school physicians not entitled to Section 14 immunity for failing to correctly diagnose testicular cancer of **PLAINTIFF'S** decedent.)

Applying the holdings of several of the Alabama Supreme Court's recent decisions involving questions of the application of immunity for governmental officials and public employees, ***Ryans v. Hayes***, *supra*, the **DEFENDANTS**' Motion to Dismiss in the matter at bar which are based in large part upon assertions of immunity is due to be denied. In the instant case **PLAINTIFFS** have specifically pleaded in their complaint that the **DEFENDANTS** have breached one or more duties which they owed to the **PLAINTIFFS** under Alabama law. Moreover, **PLAINTIFFS** have alleged in their complaint that in

committing this tortuous misconduct the **DEFENDANTS** have acted illegally and in bad faith.    Indeed, the law in Alabama is quite clear that where such allegations are specifically pleaded a governmental defendant is not automatically protected from liability by the doctrine of sovereign immunity. <u>Donahoo v. State</u>, 479 So.2d 1188 (Ala. 1985).

In the case of **<u>Ryans v. Hayes</u>**, <u>supra</u>, the plaintiffs were individuals who were victimized and injured by a state prison inmate who had escaped from a prison chain gang group which was working outside the prison.    They filed suit against the prison warden and other prison officials charging various acts and omissions which constituted negligence and wantonness.    The gist of the **PLAINTIFFS**' theories of recovery was that prison officials were negligent and wanton, based upon the inmate's violent history, in assigning the inmate to a chain gang which would be working outside of the prison.    There was also evidence that prior to the escape a prison official had changed the inmate's status, making him ineligible for assignment to an outside work crew, but that the paperwork regarding that change in status somehow did not reach the appropriate official before the inmate was dispatched outside of the prison to work on the chain gang.    **PLAINTIFFS** also charged that the individual prison guard who was responsible for watching the inmates on the chain gang was negligent and wanton in permitting him to escape.    Summary judgment(s) were granted in favor of the prison officials based upon their claims of sovereign immunity (which encompasses discretionary function immunity) and based upon their claims that they owed no duty to the victim **PLAINTIFFS**.    The **PLAINTIFFS** appealed and the Alabama Supreme Court reversed and remanded the case.

Suffice it to say that the following portion of The Alabama Supreme Court's holding

*in __Ryans v. Hayes__, supra, conclusively establishes that __DEFENDANTS__' Motion to Dismiss in the matter at bar is not well taken:*

> *"'[A] State officer or employee is not protected by discretionary immunity if in performing his discretionary functions he willfully, maliciously, fraudulently, or in bad faith injures someone.    [Nonetheless,] [o]nce a defendant demonstrates that a plaintiff's claims arise from the defendant's performance of a discretionary function [i.e., a function now entitling the defendant to State-agent immunity], the burden then shifts to the plaintiff to establish that the defendant acted in bad faith or with malice or willfulness, in order to deny the defendant discretionary immunity from suit.    The applicability of the doctrine of discretionary function must be determined on a case-by-case basis, and it is a question of law to be decided by the trial court.'"*

*831 So. 2d at 25; quoting, __Ex Parte Davis__, 721 So. 2d 685, 689 (Ala. 1998).  The majority opinion in __Ryans v. Hayes__, supra, holds that the issues of sovereign immunity, discretionary function immunity, and qualified immunity, as well as the issue of whether or not a duty is owed to the __PLAINTIFF__, are not ripe for review by the trial court until extensive discovery is conducted.  This is because a "burden shifting" process is now used to definitively resolve the effect of an asserted State-agent-immunity defense upon a plaintiffs' claim:*

> *"In order to claim the benefits of sovereign immunity, a State officer or employee bears the burden of showing that the plaintiff's claims arise from the officer's or employee's performance of a discretionary duty on behalf of the State.  Upon such a showing, the burden shifts to the plaintiff, who must show that the officer or employee acted fraudulently, willfully, maliciously, or in bad faith."*

24

*Id.*; quoting, **Ex Parte Alabama Dept. of Transportation**, 764 So. 2d 1263, 1268 (Ala. 2000). Based on the foregoing, the collective **DEFENDANTS** are not entitled to sovereign immunity under Article I, Section 14 of the Constitution of Alabama of 1901. We now move to the question of whether discretionary function immunity is available to any of the **DEFENDANTS**.

VIII.    **THE INDIVIDUAL EDUCATOR DEFENDANTS ARE NOT ENTITLED TO STATE AGENT IMMUNITY BECAUSE THEIR ACTS AND OMISSIONS, AS ALLEGED IN PLAINTIFFS' COMPLAINT, FALL WITHIN ONE OR MORE OF THE RECOGNIZED EXCEPTIONS TO IMMUNITY.**

The proposition is well understood that discretionary function immunity (also known as qualified or substantive immunity, and/or State agent immunity) is available to a state officer or employee acting within the general scope of his authority, but only when certain circumstances are present. **Grant v. Davis**, 537 So. 2d 7 (Ala. 1988). "Whether a particular defendant is engaged in a protected discretionary function and is thereby immune from liability for the injuries he causes is a question of law to be decided by the trial court." *Id.*, 537 So. 2d at 8. It has been explicitly held that:

> "The following factors should be considered in determining whether a state officer or employee is engaged in a discretionary function: the nature and importance of the function that the officer or employee is performing: the extent to which passing judgment on the exercise of discretion will amount necessarily to passing judgment on the conduct of a coordinate branch of government; the extent to which imposition of liability would impair the free exercise of discretion by the officer or employee; the extent to which the ultimate financial responsibility will fall on the officer or employee; the likelihood that harm will result

25

> *to members of the public if the action is taken; the nature and seriousness of the type of harm that may be produced; and the availability to the injured party of other remedies and other forms of relief."*

**Mitchell v. Davis**, *598 So. 2d 801 (Ala. 1992), citing with approval,* **Barnes v. Dale**, *supra*.

Some two (2) years prior to it's holding in the case of **Ryans v. Hayes**, *supra*, the Supreme Court of Alabama explicitly and unambiguously held that a claim alleging personal injury caused by the alleged negligent conduct of a government employee, even when that conduct is committed in the line and scope of his employment, is not within the ambit of the constitutional prohibition against lawsuits against the State as expressed in Article I, §14 of The Constitutional of Alabama of 1901:

> *". . . though the state cannot be sued (Section 14, Constitution), its immunity from suit does not relieve the officers of the State from their responsibility for an illegal trespass or tort on the rights of an individual, even though they act pursuant to authority attempted to be conferred by the state . . . [w]e believe that the rule is universal that an agent is not excused from personal liability for a tort which he commits for and in the name of his principal whether the principal is liable to suit or not . . . An individual cannot justify a tort on a contention that it is for the state, if the state had no such right. If the state had the right, then its officers, acting by its authority, were justified. The officers cannot be justified upon a mistaken notion of state authority. An inadvertent tort-feasor is such, though he may not be liable to the amount of damages as a willful tort-feasor would be . . . [t]he wrong is that of the officers personally as well as that of their principal. The officers are sued, not because the state has committed a wrong, but because they personally, though acting as officers, have done so. When a person commits a tort, it is wholly immaterial upon the question of his liability whether he was acting officially or personally."*

*__Ex Parte Cranman__*, 792 So. 2d 392, 402 (Ala. 2000); *quoting*, *__DeStafney v. University__*

*__of Alabama__*, 413 So. 2d 391 (Ala. 1981); other citations omitted.

In *__Ex Parte Cranman__*, *supra*, a student at the University of Alabama brought a

medical malpractice action against university physicians alleging they negligently and

wantonly breached the applicable standard of care in failing to diagnose and treat his

testicular cancer.  The student died during the pendency of the litigation and his personal

representative was substituted as plaintiff.  The trial court granted a summary judgment in

favor of the physicians concluding that they were protected from liability by discretionary-

function immunity.  The executor appealed to the Alabama Court of Civil Appeals which

affirmed the ruling of the trial court.  *__Cranman v. Maxwell__*, 792 So. 2d 386 (Ala. Civ. App.

1998).  The executor then filed a petition for certiorari review by the Supreme Court of

Alabama which reversed and remanded the cause.  In reaching it's decision, the Supreme

Court clearly used a balancing test between competing sections of the State constitution.

Article I, §13 provides that ". . . all courts shall be open; and that every person, for any

injury done him, in his lands, goods, person, or reputation, shall have a remedy by due

process of law; and right and justice shall be administered without sale, denial, or delay."

On the other hand Article I, §14 provides "[t]hat the State of Alabama shall never be made

a defendant in any court of law or equity."  In reaching a conclusion that balanced these

competing interests the Court held that:

> "The time has come to face the necessity of defining
> "injury," as that word is used in §13, in lawsuits against
> State employees alleging torts committed in the line of
> duty, in a manner that neither violates §13 nor prefers
> §14 or §6.01 of the Judicial Article over §13.  We

> decline to label all discretionary acts by an agent of the
> State, or all acts by such an agent involving skill or
> judgment, as "immune" simply because the State has
> empowered the agent to act. Such an expansive view
> of the power of the State to act with immunity for its
> agents would be inconsistent with the rights secured by
> §13."

792 So. 2d at 405. Moreover, the **PLAINTIFFS** in the matter at bar would reiterate that the

**DEFENDANTS**' mere status as state officials does not automatically cloak them with

immunity. *See*, *e.g.*, **Patton v. Black**, *supra*, (claim by student victim of tumbling accident

presented jury question as to immunity of teacher); **Lightfoot v. Floyd**, 667 So. 2d 56 (Ala.

1996) (student claiming property improperly seized could sue investigator); and **Kassaw**

**v. Minor**, 717 So. 2d 382 (Ala. Civ. 1998) (student who slipped on hallway floor could sue

student employee of college). Based on the foregoing, we submit that none of the

**DEFENDANTS** are entitled to immunity of any kind.

## IV. DEFENDANTS' MOTION TO DISMISS PLAINTIFF PARENTS' CLAIMS FOR LOSS OF SERVICES OF A CHILD IS DUE TO BE DENIED.

DEFENDANTS argue that the loss of services claim asserted by JESSICA's parents

is due to be dismissed because it has not been properly pled and because it is entirely

derivative of the claims of little Jessica. We respectfully disagree and, in support thereof,

would adopt and incorporate herein the text our previous arguments above as if set forth

herein *in haec verba*.

## CONCLUSION

It is abundantly clear that a school district is required by the I.D.E.A. to provide an

I.E.P. for each disabled child.  The collective DEFENDANTS have not even bothered to deny that they have failed to do this nor have they denied that little Jessica is disabled. Based on all of the foregoing, we submit that our complaint adequately alleges all of the necessary elements of each cause of action in order to satisfy the requirement of subject matter jurisdiction.  DEFENDANTS' Motion to Dismiss is therefore due to be DENIED.

Respectfully submitted this the ___16___ day of September, 2005.

GEORGE E. JONES, III
Ala. Bar I.D. ASB-9546-5826
Attorney for the Plaintiff

**ADDRESS OF COUNSEL:**

**GEORGE E. JONES, III**
**ATTORNEY & COUNSELOR AT LAW**
**711 Alabama Avenue**
**P. O. Box 9**
**Selma, Alabama 36702-0009**
**(334) 874-6617**

## *CERTIFICATE OF SERVICE*

I hereby certify that I have this the *16* day of September, 200*5*, served a copy of the foregoing by placing same in the United States Mail, postage prepaid and addressed to:

> Mark S. Boardman, Esquire
> Katherine C. Hortberg, Esquire
> BOARDMAN, CARR & WEED, P.C.
> P. O. Box 382886
> Birmingham, Alabama 35238-2886
> ATTORNEYS FOR DEFENDANTS

OF COUNSEL