## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DISTRICT

BENNY L. WRIGHT and KATHERINE )
E. WRIGHT, as parents and next )
friends of JESSICA W., a minor )
                               )
      Plaintiffs,           )    Case No. 2:05-CV-0699-C
                               )
v.                                 )
                               )
THE CHILTON COUNTY BOARD OF )
EDUCATION, et al.          )
                               )

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION
## FOR SUMMARY JUDGMENT

COME NOW Defendants identified as Chilton County Board of Education, Mildred

Ellison, Ann Glasscock, Alan Childress, Ann Thomas, Joe Mims, Peggy Harris, Curtis

Smith, Michael Gothard, Daryl Baker, and Donnie Finlayson and adopt all arguments raised

in their Motion to Dismiss and supporting brief and provide the following brief in support

of their Motion for Summary Judgment:

## INTRODUCTION

The plaintiff parents bring this lawsuit on behalf of their minor daughter[1] against the

Chilton County Board of Education; Board members Ann Glasscock, Alan Childress, Ann

---

[1] While the plaintiffs' complaint refers to the plaintiff student as Jessica W., the plaintiffs' attorney stated at the plaintiffs' depositions that he did not object to her last name being used. (Depo. of Jessica W., p. 17.) The last name is obvious from the style in the complaint. Therefore, the defendants have used the plaintiff student's full name in their submissions in support of their Motion for Summary Judgment.

Thomas, Joe Mims, Peggy Harris, Curtis Smith and Michael Gothard; Superintendent Mildred Ellison; Principal Donnie Finlayson; and 7th Grade Teacher Daryl Baker.  The plaintiffs make several claims on behalf of the plaintiff student, including:  violation of the IDEA;  violation of the IDEA and their substantive and due process rights under the Fourteenth Amendment, brought under 42 U.S.C. § 1983; outrage; negligent and/or wanton supervision of Principal Finlayson by Superintendent Ellison; negligent and/or wanton supervision of Superintendent Ellison by the Board members; and loss of services of the student plaintiff.  The defendants have shown in their Motion for Summary Judgment, supporting brief, narrative statement of undisputed facts, and exhibits and previously filed Motion to Dismiss and supporting brief that they are entitled to summary judgment as to each of the claims against them.

## STANDARD OF REVIEW

Summary judgment serves as a gatekeeper to block needless complaints.  Jerome A. Hoffman & William A Schroeder, *Burdens of Proof*, 38 Ala. L. Rev. 31, 37 (1986).[2]  "The mere existence of some alleged factual dispute between the parties will not defeat summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).  The moving

---

[2]Hoffman cites *Tripp v. Humana, Inc.*, 474 So. 2d 88, 90 (Ala. 1985) (the motion for summary judgment tests the sufficiency of the evidence to determine if any real issues exist that warrants a trial); and accords *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct 2548, 2555 (1986) (motions for summary judgment have replaced motions to dismiss or to strike as the principle tools by which factually insufficient claims or defenses can be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources).

party is entitled to summary judgment when the pleadings and evidence show that there is

no genuine issue of any material fact and that the movant is entitled to judgment as a matter

of law. F.R.C.P. 56(c).

On issues where the movant bears the burden of proof at trial, it must support its

motion for summary judgment with admissible evidence on all essential elements of its case

such that no reasonable finder of fact could find in favor of the non-moving party.

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). On issues where the non-

moving party bears the burden of proof at trial, the moving party may simply point out to the

court the insufficiency or absence of evidence by the non-moving party on that issue. *Id.* at

1115-16.

Once the moving party satisfies this burden, the non-moving party bears the burden

of coming forward with evidence sufficient to create a genuine issue of material fact at trial.

*Id.* at 1116. If the issue is one where the movant has the burden of proof, the movant may

still be entitled to summary judgment if, in light of all the evidence, no reasonable finder of

fact could find in favor of the non-moving party. *Id.* If, however, the issue is one in which

the non-movant bears the burden at trial, it must respond as follows:

> First, he or she may show that the record in fact contains supporting evidence,
> sufficient to withstand a directed verdict motion, which was "overlooked or
> ignored" by the moving party, who has thus failed to meet the initial burden
> of showing an absence of evidence. *Celotex*, 477 U.S. at 332, 106 S.Ct. at
> 2557 (Brennan, J., dissenting). Second, he or she may come forward with
> additional evidence sufficient to withstand a directed verdict motion at trial
> based on the alleged evidentiary deficiency. *See* Melissa L. Nelkin, *One Step
> Forward, Two Steps Back: Summary Judgment After Celotex*, 40 Hastings L.J.

53, 82-83 (1988).

*Fitzpatrick*, 2 F.3d at 1116-17.  The non-moving party is required to present substantial evidence, that is:

> Evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions.

*Zaklama v. Mt. Sinai Medical Center*, 842 F.2d 291, 295 (11th Cir. 1988) (citing *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969)); *Reynolds v. CLP Corp.*, 812 F.2d 671, 674 (11th Cir. 1987); *Michigan Abrasive Co. v. Poole*, 805 F.2d 1001, 1004 (11th Cir. 1986)). Plaintiffs bear the burden of coming forward with substantial evidence, sufficient to withstand a motion for judgment as a matter of law at trial, that demonstrates that Defendants Chilton County Board of Education, Mildred Ellison, Ann Glasscock, Alan Childress, Ann Thomas, Joe Mims, Peggy Harris, Curtis Smith, Michael Gothard, Daryl Baker, and Donnie Finlayson acted <u>deliberately</u> and <u>maliciously</u> towards the plaintiff student and thereby violated her <u>clearly established</u> federal rights in order to defeat this motion for summary judgment.  Further, the plaintiffs must come forward with substantial evidence to show that the defendant Board violated the student's rights under the IDEA in order to defeat defendants' motion for summary judgment.  According to a November 14, 2005 decision of the U.S. Supreme Court, plaintiff bears the burden of proof to establish that she is entitled to special education services. *Schaffer v. Weast*, 546 U.S. _____ (Nov. 14, 2005) Case No. 04-698.  Finally, the plaintiffs must show, by substantial evidence, that the defendants acted outrageously, negligently or wantonly.  As demonstrated by the motion for summary

4

judgment, this brief and the supporting evidence, plaintiffs cannot meet their burden, and the defendants are entitled to judgment in their favor as a matter of law as to the plaintiff student's claims. Since the plaintiff parents' loss of services claim is derivative of the plaintiff student's claims, the defendants are entitled to summary judgment as to this claim as well.

I. **THE PLAINTIFFS HAVE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES REQUIRED UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT ("IDEA").**

In their Complaint, plaintiffs claim that the Defendant Chilton County Board of Education failed or refused to plan and develop an Individualized Education Plan (IEP) for the plaintiff student. (Complaint, ¶ 24). However, the plaintiffs are first required to follow the specific process set out under the IDEA before bringing such a claim in federal court. The plaintiffs have failed to exhaust their administrative remedies under the IDEA. The Individuals with Disabilities Education Act ("IDEA") is a comprehensive federal education statute which grants disabled students the right to a public education and conditions a state's federal funding on its having in place a policy that ensures that a "free appropriate public education" is available to all children with disabilities. 20 U.S.C. § 1412(a)(1). The plaintiffs claim in their Complaint that the minor plaintiff was denied access to a free, appropriate public education or to specific programs or services. (Complaint, Count 1). The plaintiffs, however, have failed to exhaust the administrative remedies required under IDEA.

The IDEA provides a scheme of procedural protections under which parents are

entitled to:

> (1)    Examination of all relevant records pertaining to evaluation and educational placement of their child,
>
> (2)    Prior written notice whenever the responsible educational agency proposes, or refuses, to change the child's placement,
>
> **(3)    An opportunity to present complaints concerning any aspect of the local agency's provision of a free, appropriate public education, and**
>
> **(4)    An opportunity for an "impartial due process hearing" with respect to any such complaint.**

*N.B. v. Alachua County School Bd.*, 84 F.3d 1376, 1378 (11th Cir. 1996) (quoting *Honig v. Doe*, 484 U.S. 305, 312 (1988) (Emphasis added)).

If the plaintiffs have any complaint about the alleged actions or inactions of the Board or its employees or members, they are required to invoke the procedural protections of the IDEA before proceeding further under any statute. The plaintiffs first are required to request an evaluation and meeting of an IEP team for the plaintiff student. 20 U.S.C. § 1414. The plaintiffs failed to make such a request on behalf of their daughter. (Depo. of K. Wright, p. 103, l. 12-p. 105, l. 13; Depo. of B. Wright, p. 61, l. 17-p. 62, l. 20; Affidavit of Ellison.) The plaintiffs then were to present a complaint to the Chilton County Board of Education if they felt the plaintiff student had been denied any rights under the IDEA. There is no evidence, however, that such a complaint was ever made. (Depo. of B. Wright, p. 62, l. 21-p. 63, l. 1.) Even if there were such evidence, the plaintiffs are required thereafter to request a due process hearing. The plaintiffs never requested such a hearing. (Depo. of K. Wright,

p. 111, l. 22-p. 112, l. 9; Depo. of B. Wright, p. 63, l. 2-20.)    The IDEA imposes the additional procedural step of further review by the state educational agency which the plaintiffs likewise failed to exhaust.  20 U.S.C. § 1415(c).  Only after all those procedural steps had been exhausted would the plaintiffs have been entitled to seek judicial review.  *Id.* at § 1415(e)(2).  The Eleventh Circuit has held:

> The philosophy of the [IDEA] is that plaintiffs are required to utilize the elaborate administrative scheme established by the [IDEA] before resorting to the courts to challenge the actions of the local school authorities.  Key reasons for requiring the exhaustion of administrative remedies are as follows:  1) to permit the exercise of agency discretion and expertise on issues requiring these characteristics; 2) to allow the full development of technical issues and a factual record prior to court review; 3) to prevent deliberate disregard and circumvention of agency procedures established by Congress; and 4) to avoid unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

*N.B. v. Alachua*, 84 F.3d at 1378 (brackets in original) (internal citations omitted).

The plaintiffs' claim that the plaintiff student has been denied access to educational opportunities requires them to exhaust the administrative remedies of the IDEA before filing this lawsuit.  The plaintiffs should not be excused from their failure to exhaust administrative remedies based on an alleged failure by the Board, when they have never requested an IEP, never made a complaint regarding denial of services and never requested a due process hearing. See *Radcliffe v. School Bd. of Hillsborough Co., FL*, 38 F. Supp. 2d 994, 999 (M.D. Fla.1999).  The Eleventh Circuit has determined that "the exhaustion requirement may not be circumvented by casting an IDEA claim as a Section 1983 action predicated on IDEA." *Doe v. Walker Co. Bd. of Educ.*, 1997 U.S. Dist. LEXIS 22205, *17 (N.D. Ga. 1997) (citing

7

*Alford v. School Bd. of Collier Co.*, 1996 U.S. Dist. LEXIS 7370 (M.D. Fla. 1996)).

Accordingly, the plaintiffs failed to follow the mandated procedure of the IDEA. The plaintiffs' claims in this Court are therefore barred for lack of jurisdiction, and the defendants are entitled to summary judgment on the plaintiffs' claims in Counts 1 and 2 of the Complaint.

## II.    PLAINTIFFS HAVE FAILED TO SUBMIT SUBSTANTIAL EVIDENCE THAT IT WOULD BE FUTILE OR IMPROBABLE TO OBTAIN ADEQUATE RELIEF BY EXHAUSTING THE ADMINISTRATIVE REMEDIES UNDER THE IDEA.

Plaintiffs argue that the plaintiff student is entitled to special education services under the IDEA and the defendants have failed or refused to prepare an IEP. However, the plaintiffs have failed to provide substantial evidence that such a request for an IEP was ever made or that the plaintiff student even meets the definition of "child with a disability" under the IDEA. See 20 U.S.C. § 1401 (3)(A). A child with a disability under the IDEA is defined as a child-

> (i) with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this chapter as "emotional disturbance"), orthopedic impairment, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and
> (ii) who, **by reason thereof**, needs special education and related services.

*Id.* (emphasis added.)

The plaintiff student's education is not affected by her medical condition. (Affidavits of Finlayson and Baker.) In fact, the plaintiff student has excelled academically while a

student at Clanton Middle School.  (Depo. of J. Wright, p. 27, l. 7-p.28, l.23; p. 42, l.4-19;

p. 178, l. 6-8.)  The plaintiff student, therefore, does not meet the definition of a "child with

a disability" under the IDEA.  20 U.S.C. § 1401(3)(A).  This Court addressed this same issue

in *Katherine S. v. Umbach*, 2002 WL 226697 (M.D. Ala.), by stating:

> The due-process hearing officer found that Katherine did not satisfy the
> IDEA's definition of a "child with a disability" because she did not require
> "specially designed instruction." The IDEA requires local school districts to
> "locate, identify, and evaluate" all students with disabilities. 20 U.S.C.A. §§
> 1412(a)(3)(A) "student with a disability" is a student who has been evaluated
> to have one of the categories of disability, including "emotional disturbance,"
> and who needs special education and related services. §§ 1401. As the hearing
> officer noted, a student who has an impairment, but who only needs a related
> service and not special education, is not a "student with a disability" within the
> meaning of the law. 34 C.F.R. §§ 300.7(a)(2). Special education is defined as
> "specially designed instruction." §§ 300.26(a)(1). Specially designed
> instruction means:
> "[A]dapting, as appropriate to the needs of an eligible child under this part, the
> content, methodology, or delivery of instruction-
> (i) to address the unique needs of the child that result from the child's
> disability; and
> (ii) to ensure access of the child to the general curriculum, so that he or she can
> meet the educational standards within the jurisdiction of the public agency that
> apply to all children."
> §§ 300.26(b)(3). Therefore, in order to qualify as a "student with a disability"
> pursuant to the IDEA, Katherine must require "specially designed instruction"
> in order to have access to, and benefit from, the general educational curriculum.
>
> The evidence clearly demonstrates that Katherine was accessing, and achieving
> benefit in, the general education curriculum at Auburn High School until she
> stopped attending in April 1997. Until that point, her most significant
> educational difficulty was her slipping, but still passing, grades in accelerated
> courses. She attended school regularly, had friends, and participated in
> extracurricular activities. . . .Thus, there is no evidence to suggest that she
> required specially designed instruction in order to access and benefit from the
> general curriculum at Auburn High School. As the due-process hearing officer
> found, there was no reason for any Auburn City School district personnel to

suspect that Katherine was in need of special education and related services
while she was a student there.

*Katherine S. v. Umbach*, 2002 WL 226697, *10 (M.D. Ala.).

Like the student in *Katherine S.*, the plaintiff student here does not require specially
designed instruction in the classroom. The plaintiff student in this case, like *Katherine S.*,
is accessing, and achieving benefit in, the general education curriculum at Clanton Middle
School. The plaintiff student is a full time student who makes passing grades in regular
education classes, who is in an academic honor club, who was a cheerleader and is now a
dance team member. (Depo. of J. Wright, p. 43, l. 4-19; p. 93, l. 23-p. 94, l. 2; p. 178, l. 6-8;
p. 30, l. 8-15; p. 37, l. 17-20.) Further, to look at the plaintiff student, one would not know
that she has a medical condition. (Affidavit of Finlayson.) Clearly, the same conclusion can
be reached here that was reached by this Court in *Katherine S.*, the plaintiffs have failed to
show that the plaintiff student meets the requirements for special education services under
the IDEA.

The plaintiffs do not fall under any of the exemptions to the exhaustion requirement.
"The plaintiffs bear the burden of demonstrating that their claims fall into one of the
exceptions to the exhaustion requirement." *Hamilton v. Board of School Commissioners of
Mobile Co.*, 993 F. Supp. 884, 889 (S.D. Ala., 1996). Plaintiffs cannot produce any evidence
to fulfill their burden. They cannot show that it would be futile for them to follow the
requirements of the IDEA. If none of the required requests or complaints has been made by

10

the plaintiffs to the appropriate people, how can the plaintiffs argue that they know it would be futile for them to proceed?  The plaintiffs are also foreclosed from arguing that it would be improbable that they would obtain adequate relief from the Chilton County Board of Education if they followed the administrative procedures of the IDEA, since they cannot present evidence of this either. The procedural mechanisms set out in the IDEA are meant to allow these types of issues to stay within the schools and out of the courts.  The plaintiffs should not be allowed to bypass this whole process based on unsupported accusations.  Accordingly, the plaintiffs' claim of violation of the IDEA by the defendants is due to be dismissed.

III.    **PLAINTIFFS CANNOT SHOW THAT THE PLAINTIFF STUDENT IS ENTITLED TO SPECIAL EDUCATION SERVICES UNDER THE IDEA.**

Plaintiffs have failed to show that the plaintiff student is in need of special education and related services.  The plaintiff student has passed all of her classes every year she has been enrolled as student in the Chilton County School System.  (Depo. of J. Wright, p. 178, l. 6-8.)  In fact, she was on the A-B Honor Roll in the seventh grade, she has made all As, Bs and Cs in the eighth grade, and in the seventh and eighth grades, she has been a member of the Beta Club, a scholastic honor society, which only admits students with good grades. (Depo. or J. Wright, p. 27, l. 7-p. 28, l. 23; p. 42, l. 4-13; p. 43, l. 4-19.)  The times that she is absent because of her medical condition, the plaintiff student has been able to make up her classwork and tests without problem. (Depo. of J. Wright, p. 82, l. 19-p. 83, l. 5; p. 104, l. 18-

p. 105, l. 1; p. 116, l. 13-22.)  The plaintiff student's medical condition has not affected her academic education at Clanton Middle School.  (Affidavits of Finlayson and Baker.) Physically, the plaintiff student can attend all classes (even physical education), can participate in all classes (even physical education), gives herself her own medicines, and uses no appliances such as a wheelchair or cane.  (*Id*).  Therefore, since the plaintiffs can not show that the plaintiff student is even eligible for special education services under the IDEA, the plaintiffs' argument that there has been a "total and utter failure on the part of the Chilton County Board of Education to comply whatsoever with any of the provisions of IDEA" is due to fail.  Furthermore, the burden of proof in an administrative hearing challenging an IEP is placed upon the party seeking relief, here the plaintiffs, pursuant to a recent decision from the United States Supreme Court, *Schaffer v. Weast*, 546 U.S. _____ (Nov. 14, 2005) Case No. 04-698.  Clearly, the plaintiffs should be required to prove this burden to a due process hearing officer and a specific  administrative finding be made before they can bring their claims before this Court.  The defendants therefore should be granted summary judgment in their favor as to plaintiffs' claim of violation of the IDEA.

## IV.  NO CLAIM UNDER THE IDEA CAN BE BROUGHT AGAINST AN INDIVIDUAL, AND THUS, THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT.

In their Complaint, the plaintiffs claim that the defendants have discriminated against the plaintiff student in violation of IDEA.  (Complaint, ¶ 30).  The individual defendants show that this claim in the Complaint fails to state a claim against them upon which relief

may be granted.

The plaintiffs allege that the minor plaintiff is a handicapped individual who is eligible for special education and related services. (Complaint, ¶ 21). Further, the plaintiffs state that the Chilton County Board of Education is the recipient of federal funds. (Complaint, ¶ 22). The plaintiffs go on to state in their Complaint that the individual defendants are employees and board members of the Chilton County Board of Education. (Complaint, ¶¶ 8-17). However, despite these facts, they still allege that the individual defendants violated the plaintiffs' rights under the IDEA. Clearly, Defendants Mildred Ellison, Ann Glasscock, Alan Childress, Ann Thomas, Joe Mims, Peggy Harris, Curtis Smith, Michael Gothard, Daryl Baker, and Donnie Finlayson, in their individual capacities, are not recipients of federal financial assistance. Accordingly, they cannot be held liable under the IDEA.

In *United States Dept. of Transportation v. Paralyzed Veterans of America*, 477 U.S. 597, the U.S. Supreme Court, in discussing claims brought pursuant to Section 504 of the Rehabilitation Act of 1973, a statute similar to the IDEA, observed that:

> Congress limited the scope of § 504 to those who actually "receive" federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds.
>
> . . .
>
> By limiting coverage to recipients, Congress imposes the obligation of § 504 upon those who are in a position to accept or

13

> reject those obligations as part of the decision whether or not to
> "receive" federal funds.

477 U.S. at 605, 606. It has also been stated that:

> [T]he coverage of the Rehabilitation Act does not follow federal
> aid "past the intended recipient to those who merely derive a
> benefit from the aid or receive compensation for services
> rendered pursuant to a contractual arrangement."

*Gallagher v. Croghan Colonial Bank*, 89 F.3d 275, 278 (6th Cir. 1996) (citing *Hamilton v.*

*Illinois Cent. R.R. Co.*, 894 F. Supp. 1014, 1022 (S.D. Miss. 1995)). Referring to the same

language quoted above from the Sixth Circuit in *Gallagher v. Croghan*, the Court of Appeals

for the Seventh Circuit observed explicitly that: "Employees of the recipients of federal

financial assistance are not in themselves the recipients of such assistance." *Grzan v.*

*Charter Hospital of Northwest Indiana*, 104 F.3d 116, 120 (7th Cir. 1997). The Seventh

Circuit concluded, as had the Sixth Circuit, that employees of federal financial aid recipients

cannot be held individually liable.

As employees of the Chilton County Board of Education, the individual defendants

were not the intended recipients of federal funds, but merely received compensation for their

services rendered pursuant to their employment contracts with the board of education.

Furthermore, none of the individual defendants was "in a position to accept or reject" the

obligations under the IDEA or the receipt of federal funds. They, therefore, are not within

the coverage of the IDEA and cannot be held liable individually for the plaintiffs' claimed

violations. Accordingly, the individual defendants are entitled to summary judgment as to plaintiffs' claims under the IDEA and 42 U.S.C. § 1983, based on alleged violations of the IDEA.

## V.   PLAINTIFFS' CLAIMS UNDER SECTION 1983 ARE ATTEMPTS TO CIRCUMVENT THE ADMINISTRATIVE PROCEDURES PROVIDED FOR IN THE IDEA.

The plaintiffs' claims in Count 2 of failure to comply with IDEA in violation of the plaintiff student's constitutional rights under 42 U.S.C. § 1983 are merely attempts to circumvent the administrative procedures provided for in the IDEA. Thus, summary judgment is due to be granted as to these claims as well.

Section 1983 is unavailable for the plaintiffs' claims under the IDEA. In *Sellers by Sellers v. School Board of City of Mannassas, VA*, 141 F.3d 524 (4th Cir. 1998), the Fourth Circuit Court held the following:

> Section 1415(f) . . . fails to state, or even imply, that section 1983 suits may be brought for IDEA violations. Instead, it pointedly omits 42 U.S.C. § 1983 from its list of statutes. This omission is significant. Permitting the recovery of general damages through section 1983 for IDEA violations would subject school boards to damages exponentially greater than the tuition reimbursement they currently face under IDEA itself. Section 1415(f)'s vague language surely did not place States on notice of such sweeping and open-ended liability. If we were to permit section 1983 claims like the Sellers' to proceed, we would effectively blind-side States with large and unanticipated penalties. Accordingly, we hold that section 1415(f) fails to express unambiguously a congressional intent that IDEA violations also be remedied by section 1983. . . . [W]e hold that the Sellers cannot sue under section 1983 for alleged IDEA violations. As a result, we reject their attempt to recover compensatory and punitive damages unavailable in an action directly under IDEA. We note that

> our conclusion is consistent with at least two other circuits that have held
> compensatory and punitive damages are not available through the alternate
> route of a section 1983 claim for violations of IDEA. *See Heidemann*, 84 F.3d
> at 1033 [8th Cir. 1996] (general damages unavailable in section 1983 claim
> for alleged IDEA violations); *Crocker*, 980 F.2d at 386-87 (same). [6th Cir.
> 1992].

*Id.* at 532 (bracketed material added). Accordingly, the defendants are entitled to summary

judgment on the plaintiffs' claims of constitutional violations under 42 U.S.C. § 1983 based

on alleged violations of the IDEA. The plaintiffs should not be allowed the opportunity to

circumvent the remedies available through the IDEA by bringing an action under § 1983.

## VI.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity "allows government officials to carry out their discretionary

duties without the fear of personal liability or harassing litigation, protecting from suit all but

the plainly incompetent or one who is knowingly violating the federal law." *Williams v.*

*Consolidated City of Jacksonville*, 341 F.3d 1261, 1267 (11th Cir. 2003) (citations omitted).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate

the law." *Malley v. Briggs*, 475 U.S. 340, 341 (1986).

The plaintiff who questions the claim of qualified immunity has the burden of proof

and cannot rely on general, conclusory allegations to show that the right is clearly

established. To be clearly established, "a right must be so particularized that in the light of

preexisting law the unlawfulness must be apparent." *Hansen v. Soldenwagner*, 19 F.3d 573

(11th Cir. 1994). The plaintiff must establish that when the individual defendants acted, the law established the contours of that right so clearly that reasonable officials would have understood that their acts were unlawful. The relevant law must be from the U.S. Supreme Court, the Alabama Supreme Court, or the Eleventh Circuit. *Kelly v. Curtis*, 21 F.3d 1544 (11th Cir. 1994).

The question of whether a government official or employee acted within his or her discretion is two-fold. The first inquiry in determining whether a school official is entitled to qualified immunity is whether the official's alleged improper actions are of the type that fall within the official's job responsibilities. *Holloman v. Walker County Bd. of Educ.*, 370 F.3d 1252, 1265 (11th Cir. 2004). As applied to this case, this Court must ask whether Board members Ann Glasscock, Alan Childress, Ann Thomas, Joe Mims, Peggy Harris, Curtis Smith, Michael Gothard, Superintendent Mildred Ellison, Principal Donnie Finlayson and 7th Grade Teacher Daryl Baker were performing legitimate job-related functions through means that were within their power to utilize. *Id.* at 1265-66. In other words, to satisfy the first inquiry, the defendants simply have to establish that their actions fell within their legitimate job descriptions.

In this case, the individual defendants' job duties include the supervision of administrators and teachers employed by the Chilton County Board of Education and the education of students. Board members are responsible for establishing Board policy and supervising the superintendent. Superintendent Mildred Ellison's duties as superintendent

17

are to administer the school system and supervise the principals and teachers. Principal Donnie Finlayson is responsible for supervising the teachers and students at Clanton Middle School. Teacher Daryl Baker's duties, as a teacher at Clanton Middle School, are to educate and supervise students. As such, the defendants have satisfied the first prong of the qualified immunity test.

The next question which must be asked is whether the government official executed his or her job-related functions in an authorized manner. *Holloman*, 370 F.3d at 1266. In considering this inquiry, this Court is to ask whether the defendants' actions (on a general level rather than in the specific application in this case) were legitimate prerogatives of their jobs. In other words, would the defendants' actions in this case be considered part of their duties and legitimate exercises of their authority? Once again, the defendants had the authority, and in fact had a duty, to supervise administrators and teachers and educate students. As such, their activities in relation to the education of the plaintiff student and the supervision of the superintendent, principal and teacher were discretionary acts for which they are entitled to seek qualified immunity. *See Holloman*, 370 F.3d at 1267.

Now that the defendants have established that they were engaged in discretionary functions at the time of the incident, this Court must apply the two-part analysis set forth by the U.S. Supreme Court in *Hope v. Pelzer*, 536 U.S. 730 (2002). Under this analysis, "the threshold inquiry a court must undertake is whether [the] plaintiff's allegations, if true, establish a Constitutional violation." *Id.* at 736. If a constitutional right would have been

violated under the plaintiffs' version of the facts, the next step is to ask whether the right was clearly established at the time of the alleged violation. *Id.* at 739. As outlined below, the individual defendants acted within their discretion in educating the plaintiff student and supervising the superintendent, principal and teacher. As such, the burden now shifts to the plaintiffs to establish that the individuals' actions rose to the level of a constitutional violation. The plaintiffs cannot satisfy this burden because there is no law that clearly establishes: (a) that the plaintiff student, who has passed every class and is on the honor roll, was entitled to an IEP under the IDEA; (b) that the plaintiff student was entitled to special education and related services under the IDEA; or (c) that any violation of the IDEA violated the plaintiff student's substantive due process or equal protection rights under the Fourteenth Amendment. Because the plaintiffs cannot satisfy their burden of showing that they are *not* so entitled, the defendants are entitled to qualified immunity and summary judgment.

A.   **The Plaintiff Student Has No Property Interest In Becoming A Cheerleader And Thus Has No Interest Protected By The Due Process Clause.**

Assuming that part of the plaintiffs' claim under 42 U.S.C. § 1983 is that the plaintiff student's due process was violated when she did not make the eighth grade cheerleading squad at Clanton Middle School, federal courts have repeatedly held that participation in extracurricular activities is a privilege, rather than a right. *James v. Ptyalize High Sch.*, 907 F. Supp. 364, 366-67 (M.D. Ala. 1995), aff'd 104 F.3d 372 (11th Cir. 1996); *Farver v. Board of Educ. of Carroll County*, 40 F. Supp. 2d 323, 324-325 (D. Md. 1999); *Brands v. Sheldon*

19

*Comm. Sch.*, 671 F. Supp. 627, 631 (N.D. Iowa 1987); *Haverkamp v. Unified Sch. Dis. No. 380*, 689 F. Supp. 1055, 1058 (D. Kan. 1986); *Paschal v. Perdue*, 320 F. Supp. 1274, 1276 (S.D. Fla. 1970).   Thus, the plaintiff student has no property interest in becoming a cheerleader and therefore, no interest that is protected by the Due Process Clause.

In  *James v. Ptyalize High Sch.*, the plaintiff sued after not being chosen as head or co-head cheerleader of the football cheerleading squad.  907 F. Supp. at 364.  Among other claims, the plaintiff alleged that she was deprived of her due process rights under the Fifth Amendment.  907 F. Supp. at 366.  She said that she was denied a property interest in being selected as head or co-head cheerleader of the football cheerleading squad.  *Id*.  In rejecting the plaintiff's argument, the district court stated the following:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead have a legitimate claim of entitlement to it.  *Board of Regents v. Roth*, 408 U.S. 564, 577, 33 L.Ed.2d 548, 92 S.Ct. 2701 (1972).  ***It is clear that a majority of the federal courts addressing the question have determined that a student does not have a cognizable property interest in participating in extracurricular activities at public institutions***.

907 F. Supp. at 366-67 (emphasis added).

In making the above determination, the court relied in part on the former Fifth Circuit's decision of *Mitchell v. Louisiana High School Athletic Association*, 430 F.2d 1155 (11th Cir. 1970).[3]  In *Mitchell*, the plaintiffs' parents sued after their sons were ruled ineligible

---

[3] All Fifth Circuit opinions rendered prior to October 1, 1981 are binding on this Court.  See *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

to compete in athletics during their senior year. The students' ineligibility stemmed from the Louisiana High School Athletic Association's (LHSAA) "eight-semester rule." In essence, the "eight semester rule" provided that a student may not attend high school for more than eight semesters and that any student who repeated grades six through twelve for other than academic reasons would lose his fourth year of eligibility in high school. The students had voluntarily repeated the eighth grade and were subsequently declared ineligible to participate in athletics during their senior year. In response, the students' parents filed suit seeking injunctive relief. The parents claimed that the rule violated the students' rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The trial court permanently enjoined LHSAA from enforcing the rule against the students and LHSAA appealed. The Fifth Circuit reversed the decision and directed the district court to dismiss the complaints. In so ruling, the court quoted the Tenth Circuit, saying:

> "The potential jurisdiction of the Civil Rights Act cannot be used as a sham for a review of the acts of the Board of Control . . . which do not involve a civil right. In the case at bar, once the pleadings were pierced at pre-trial, it became apparent that [the plaintiff's] grievance with the Athletic Association lay only with the application of its residence rule, the Board's refusal to grant an exception for hardship, and a general attack upon the amount of power delegated by the high schools to the Association. . ."

> The present case can fare no better. 28 U.S.C. § 1343 grants a district court jurisdiction to redress a deprivation, under color of state law, of a right or privilege *secured by the Constitution or federal law.* While it is clear that LHSAA's disqualification of the students is state action for constitutional purposes, neither of appellees' allegations raises a substantial federal question.

430 F.2d at 1158 (quoting *Oklahoma High Sch. Athletic Association v. Bray*, 321 F. 2d 269,

273 (10th Cir. 1963)(emphasis in original)).

This case, like *James* and *Mitchell*, involves a claim by a student who was not allowed to participate in an extracurricular activity. The student in this case, like the student in *James*, had no more than a unilateral expectation of being chosen as a cheerleader. Moreover, she does not have a legitimate claim of entitlement to a position on the cheerleading squad.

The student in this case is also seeking redress on the same basis as that sought by the students in *Mitchell* – the plaintiff student here simply disagrees with the *process* by which the cheerleaders at Clanton Middle School are chosen and the school officials' refusal to simply "place" her on the squad: her grievance does not raise a substantial federal question. See also *Walch v. Louisiana High Sch. Athletic Association*, 616 F.2d 152, 159 (5th Cir. 1980) ("A student's interest in participating in a single year of interscholastic athletics amounts to a mere expectation rather than a constitutionally protected claim of entitlement.")

The United States Court of Appeals for the Sixth Circuit affirmed the dismissal of a case similar to the case at bar. *See Brindisi v. Regano*, 2001 WL 1216956 (6th Cir., 2001). In *Brindisi*, the plaintiff sued after being denied a place on the junior varsity basketball cheerleading squad. 2001 WL 1216956, *1. The district court dismissed the case, holding that the plaintiff had no property interest in becoming a cheerleader, and thus, no interest protected by the Due Process Clause. The district court further found that the plaintiff was not arbitrarily excluded from the squad. The United States Court of Appeals for the Sixth

22

Circuit affirmed the decision, saying that the plaintiff there had "neither a liberty nor a property interest in interscholastic athletics."

Like the plaintiff in *Brindisi*, the plaintiff student has no property interest that would give rise to Due Process protection. Further, the Complaint in this case does not even sufficiently allege that the defendants herein did anything to deprive the plaintiff student of any alleged rights under federal or state constitution law. [4] Therefore, like the claim in *Brindisi*, the plaintiffs' claim against the Board of Education and educators is due to be dismissed.

**B.    Plaintiffs Cannot Establish A Constitutional Violation Based On Their Allegation That The Plaintiff Student Was Denied Access To The Restroom.**

In their Complaint, the plaintiffs claim that the defendants violated the plaintiff student's constitutional rights, in violation of 42 U.S.C. § 1983. During their depositions, the plaintiffs described the incident which they claim is the only reason Defendant Baker was named as a defendant in this lawsuit- one occasion in seventh grade when Mr. Baker did not allow the plaintiff student to miss instructional time to leave the class and go to the restroom. (Depo. of K. Wright, p. 32, l. 8-16.) The plaintiffs admitted that after they discussed the

---

[4] Plaintiffs claim in their Complaint, paragraph 26, that "the experience of participation by Jessica with the other girls would serve as a substitute for outside tutoring." Such belittles those who actually desire tutoring. Of course no academic tutoring is provided by the "other girls" of the cheerleading squads at Clanton Middle School. Cheerleading is an after school, extracurricular activity.

incident with Principal Finlayson, and he, in turn, notified Mr. Baker of the parents' request that the plaintiff student have immediate access to the restroom at all times, they were no further incidents with Mr. Baker. (Depo. of J. Wright, p. 119, l. 15-p. 120, l. 22; p. 123, l. 4-18; p. 168, l. 3-7.) In fact, the plaintiff student admitted that Mr. Baker was a good teacher who answered her questions and helped her when she had been absent. (Depo. of J. Wright, p. 103, l. 19-p. 105, l. l.)

The Alabama Court of Civil Appeals has previously declared that a teacher's not allowing a student to interrupt classtime to go to the restroom does not rise to the level of a constitutional violation. *Certiorari* was denied by both the Alabama and U.S. Supreme Courts. *Boyett v. Tomberlin*, 678 So. 2d 124 (Ala. Civ. App. 1996), cert denied (Ala., 1996), 519 U.S. 1077, 17 S. Ct. 738; 136 L. Ed. 2d 677 (1997). The Court established that a teacher's resolution of the question whether a student genuinely needs to use the restroom involves an exercise in judgment and choice. *Id.* at 127. The Court went on to state that "The Due Process Clause of the Fourteenth Amendment simply does not guarantee a student the right to be excused from a classroom upon demand, even if the asserted reason is to use the toilet." *Id.* Clearly, if the student in that case did not show a deprivation of a constitutional right or establish bad faith or deliberate indifference on the part of the teacher and the administrators, no such showing can be made here against Mr. Baker or any of his supervisors. In *Boyette*, the appellate courts affirmed the trial court's entry of summary judgment in favor of the educators on the plaintiff's § 1983 claim. The same result should

24

be reached here, and summary judgment should be entered in favor of the defendants.

**C.    Allegations Of Comments Made By Principal Finlayson And Superintendent Ellison To The Plaintiff Student Do Not Violate The IDEA.**

The plaintiffs claim that several comments made to the plaintiff student by Principal Finlayson and Superintendent Ellison were in violation of the IDEA.  (Complaint, ¶ 26). However, the plaintiffs do not cite to any provision of the IDEA which supports this argument.  There is no provision in the IDEA which prohibits this alleged conduct.  Further, if the alleged statements were made by either educator, at most, they would rise to the level of poor judgment.  The Alabama Supreme Court has held on numerous occasions that educators cannot be held liable for using poor judgment, if their actions were taken in furtherance of their educating and/or supervising students and they were using their judgment.

The Alabama Supreme Court decided a case of poor judgment by a principal in *Byrd v. Sullivan*, 657 So.2d 830 (1995).  There, a student sustained a fractured jaw from the fist of another student, yet the principal made the victim apologize to her attacker.  The principal refused to allow the victim any medical care and refused to allow the victim to call her parents.  The Alabama Supreme Court wrote:

> In retrospect, one could perhaps criticize Sullivan's refusal to allow Byrd to telephone home after being attacked by Knight; certainly, her decision to make Byrd apologize to Knight seem curious.  However, these are the types of decisions made by teachers, principals, and other school personnel every day,

using their best judgment and evaluation of the circumstances. Sullivan's decisions in this matter were "personal deliberation[s], decision[s], and judgment[s]" in the performance of her job; therefore, Sullivan was performing a discretionary function and is entitled to qualified immunity.

*Id*.    See also the Alabama Supreme Court's refusal to "second-guess" educators in supervising students in *Ex parte Blankenship*, 806 So. 2d 1186, 1190 (Ala., 2000;, *Ex parte Turner*, 840 So. 2d 132, 136 (Ala. 2002); *Ex parte Spivey*, 846 So. 2d 322, 332 (Ala. 2002) and *Ex parte Nall*, 879 So. 2d 541, 545 (Ala. 2003).

### D.    Plaintiffs Cannot Show that the Plaintiff Student Suffered Any Damage From Not Being Allowed to Use the Restroom During Instructional Time.

Plaintiffs claim that the plaintiff student has suffered emotional distress because of the treatment she received at school, including Mr. Baker's not allowing her to use the restroom during class on one occasion. However, the plaintiffs cannot show any damage to the student because of this one incident. The plaintiff student admitted that she had the opportunity to use the restroom on the way out of the school building once the dismissal bell rang, but she chose not to do so. (Depo. of J. Wright, p. 120, l. 17-22; p. 121, l. 19-23.) Instead, she exited the building, bypassing the restroom, and got in her mother's car, to drive the few miles to their home. (Depo. of J. Wright, p. 120, l. 17-p. 121, l. 23.) She did not use the restroom on herself during class or on the way out of the school building. (Depo. of J. Wright, p. 122, l. 1-3.) The plaintiff student has never soiled her clothes in the school building. (Depo. of J. Wright, p. 136, l. 20-22.) Clearly, she did not suffer any damage

because of this one incident, and thus, Mr. Baker, and every other defendant, is entitled to summary judgment as to this federal claim.

**E.   None of the Plaintiffs' Claims Rise to the Level of a Constitutional or Federal Violation, and Thus, the Individual Defendants are Entitled to Summary Judgment in Their Favor as to Those Claims.**

Even if all of the plaintiffs' allegations are taken as true, none rises to the level of a federal violation.  The Middle District has held that the plaintiffs "cannot raise a state tort claim to the level of a federal disability claim merely because the plaintiff has a disability at the time the event occurred."  *Gaither v. Barron*, 924 F. Supp. 134, 137 (M.D. Ala. 1996).

The plaintiffs' specific allegations against the defendant educators are that she was not selected for the eighth grade cheerleading squad, they made statements to her regarding her disability, and they did not allow her to use the restroom during class.  Obviously, these allegations do not constitute federal violations of the plaintiff student's rights.  Accordingly, the individual defendants are entitled to qualified immunity.

**VII.   PLAINTIFFS' CLAIMS AGAINST THE INDIVIDUAL EDUCATOR DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE REDUNDANT OF THEIR CLAIMS AGAINST THE CHILTON COUNTY BOARD OF EDUCATION AND ARE DUE TO BE DISMISSED.**

When individual school administrators and board members, such as these individual defendants, are sued in their official capacities, they are considered officers of the board of education.  *See* the Middle District's decision in *Godby v. Montgomery County Board of Education,* 996 F.Supp. 1390, 1403 (M.D. Ala. 1998).  "Claims against officers in their

27

official capacity are 'functionally equivalent' to claims against the entity that they represent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Further, the *Busby* Court held that such claims would be "redundant and possibly confusing to the jury." *Id.* Consequently, Defendants Mildred Ellison, Ann Glasscock, Alan Childress, Ann Thomas, Joe Mims, Peggy Harris, Curtis Smith, Michael Gothard, Daryl Baker, and Donnie Finlayson are entitled to summary judgment of all claims against them in their official capacities, since the same claims are made against the Chilton County Board of Education.

## VIII.  **THE ALLEGED ACTS OF THE DEFENDANTS DO NOT SATISFY THE REQUIRED ELEMENTS OF THE TORT OF OUTRAGE.**

The plaintiffs' Complaint alleges the tort of outrage against the Board and the individual educators. (Complaint, Count 3). The Alabama Supreme Court has consistently held that "the tort of outrage is a very limited cause of action that is available in only the most egregious circumstances." *Deleon v. Kmart Corp*, 735 So. 2d 1214, 1217 (Ala. Civ. App. 1998) (citing *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993)). The cases in which the Alabama Supreme Court has found a jury question on an outrage claim are limited to three categories of cases: 1) wrongful conduct in the context of family burials; 2) bad faith in settling insurance claims; and 3) egregious sexual harassment. *Id.* The facts in the present case clearly do not demonstrate any of these "most egregious circumstances." Thus, the tort of outrage is not a cognizable claim for the present situation.

Furthermore, even if this case presented "most egregious circumstances," the elements

of the tort of outrage are not satisfied by the evidence in this case. The elements of the tort of outrage in the state of Alabama are:

> 1) The defendant either intended to inflict emotional distress or knew or should have known that emotional distress was likely to result from his conduct;

> 2) the defendant's conduct was extreme and outrageous; and,

> 3) the defendant's conduct caused emotional distress so severe that no reasonable person could be expected to endure it.

*Jackson v. Alabama Power Co.*, 630 So. 2d 439, 440 (Ala. 1993).

The plaintiffs allege that the defendants intended to cause emotional distress or should have known that emotional distress was likely to result from their alleged actions. The plaintiffs allege that the defendant educators and Board members and the Board acted in an extreme or outrageous manner. However, the plaintiffs cannot provide substantial evidence of any such extreme conduct on the part of these defendants. The plaintiff student was not allowed to interrupt instructional time during Mr. Baker's history class to use the restroom on one occasion. On every occasion after that, Mr. Baker allowed her to leave class to use the restroom whenever she needed to. (Depo. of J. Wright, p. 119, l. 15-p. 120, l. 22; p. 123, l. 4-18; p. 168, l. 3-7; Affidavit of Baker.) The plaintiff student was advised by Principal Finlayson on one occasion that she should not miss instructional time to visit her mother, who was substitute teaching in the school building. (Depo. of J. Wright, p. 168, l. 11-23; p. 57, l. 9-13; Affidavit of Finlayson.) The plaintiffs do not have evidence of any further acts

29

by either of these defendants or any acts of any other defendant. Clearly, neither of these incidents rises to the level of outrageous conduct by any defendant. The Alabama Court of Civil Appeals analyzed the issue as follows:

> The question . . . for the classroom teacher is: does the student genuinely need to use the restroom, or is he seeking to get out of class for another reason? A teacher's resolution of that question necessarily involves an exercise in judgment and choice. It is the epitome of a discretionary function.
>
> . . .
>
> The teacher was entitled to immunity when she exercised her discretionary authority to refuse the student's request to leave the classroom.

*Boyette v. Tomberline*, 678 So. 2d 124, 127 (Ala. Civ. App., 1995.)

The tort of outrage is not cognizable under the circumstances of this case, and the plaintiffs have failed to provide evidence to support the legal elements of outrage. Therefore, the defendants are entitled to summary judgment on the plaintiffs' claims of outrage.

## IX.   THE CHILTON COUNTY BOARD OF EDUCATION IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' STATE LAW CLAIMS AGAINST IT PURSUANT TO SOVEREIGN IMMUNITY.

State law claims against a board of education are protected by absolute immunity pursuant to the doctrine of sovereign immunity as enumerated in Article I, § 14 of the Constitution of Alabama (1901). This section provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Defendant Chilton County Board of Education is an agency of the State of Alabama and enjoys sovereign immunity. See

*Louviere v. Mobile Co. Bd. of Educ.*, 670 So. 2d 873, 877 (Ala. 1995). It is well established in Alabama jurisprudence that local school boards of education, both county and city, are responsible for the dispensation of a state function, namely educating the citizens of the state, and as such, are agencies of the State of Alabama. E.g., *Hickman v. Dothan City Bd. of Educ.*, 421 So. 2d 1257, 1259 (Ala. 1982); *Hutt v. Etowah Co. Bd. of Educ.,* 454 So. 2d 973 (Ala. 1984); *Sims v. Etowah Co. Bd. of Educ.*, 337 So. 2d 1310 (Ala. 1976) ("County boards of education are not agencies of the counties, but are local agencies of the state, charged by the legislature with supervising public education within counties. As such, they execute a state function, not a county or city function, and therefore, they partake of the state's immunity."). Clearly, the Chilton County Board of Education is absolutely immune from all of the plaintiffs' state law claims against it. Consequently, the individual educators in their official capacities are also entitled to absolute immunity from the state law outrage and negligent and wanton supervision claims made against them in their official capacities.

## X.    DEFENDANTS MILDRED ELLISON AND THE INDIVIDUAL BOARD MEMBERS ARE ENTITLED TO THE PROTECTION OF STATE-AGENT IMMUNITY AS TO PLAINTIFFS' STATE LAW CLAIMS OF NEGLIGENT AND WANTON SUPERVISION.

Each of the plaintiffs' claims in Counts 4 and 5, negligent and wanton supervision, arises from the performance of the individual defendants' duties as Board members and employees of the Chilton County school system, and as such are barred by State-agent immunity. The Alabama Supreme Court, in *Ex Parte Cranman*, 792 So. 2d 392 (Ala. 2000),

restated the rules governing immunity of state agents for tort liability:

> A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> (1) formulating plans, policies, or designs; or
>
> (2) **exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:**
>
> > (a) making administrative adjudications;
> >
> > (b) allocating resources;
> >
> > (c) negotiating contracts;
> >
> > (d) hiring, firing, transferring, assigning, or **supervising personnel**; or
>
> (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State-agent performs the duties in that manner; or
>
> (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
>
> (5) **exercising judgment in the discharge of duties imposed by statute, rule, or regulation in** releasing prisoners, counseling or releasing persons of unsound mind, or **educating students**.

792 So. 2d at 405 (emphasis added).  At all times relevant to this case, the defendant superintendent and Board members were an employee and members of the Chilton County Board of Education, respectively.  As such, they are entitled to the immunity which protects agents of the state.

Further, it is well established that the administration of school systems is the responsibility of the county boards of education.  "Accordingly, the Courts will not seek to control the exercise of the broad discretion given by the legislature to county boards of

education." *Hargett v. Franklin County Board of Education*, 375 So. 2d 1352, 54 (Ala. 1979). The Alabama Supreme Court has also held that a court cannot substitute its judgment for that of the protected state actor, absent proof of fraud or bad faith. *Ex parte City of Birmingham*, 624 So. 2d 1018, 1021 (Ala. 1993) (citing *City of Birmingham v. Wilkinson*, 516 So. 2d 585 (Ala. 1987); *Bentley v. County Comm'n for Russell County*, 264 Ala. Ala. 106, 84 So. 2d 490, 493 (1955); *Van Antwerp v. Board of Comm'rs of City of Mobile*, 217 Ala. 201, 115 So. 239, 243 (1928); *Taxpayers & Citizens of the City of City v. City of Foley*, 527 So. 2d 1261, 1264-65 (Ala. 1988)). Clearly, in this case there is no evidence of fraud or bad faith on the part of the Chilton County Board of Education members or superintendent. Accordingly, Mildred Ellison, Ann Glasscock, Alan Childress, Ann Thomas, Joe Mims, Peggy Harris, Curtis Smith and Michael Gothard are entitled to the protection of State-agent immunity from plaintiffs' claims in Counts 4 and 5.

## XI.    THE INDIVIDUAL DEFENDANT EDUCATORS AND BOARD MEMBERS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO EVIDENCE OF ANY WANTON CONDUCT BY THEM.

The plaintiffs makes the same specific allegations against each of the individual board members and Ms. Ellison claiming wantonness as were made claiming negligence. The Alabama Supreme Court has held unequivocally that claims of wantonness must be supported by proof of the defendant's actual knowledge the injury will likely or probably result. *See Bussey v. Eufaula Concrete Co., Inc.*, 567 So. 2d 259, 260 (Ala. 1990). Alabama's Supreme Court has stated:

[W]antonness, which requires some degree of conscious culpability, is not to be confused with negligence (i.e. mere inadvertence):

> "Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness plainly and simply are qualitatively different tort concepts of the actionable culpability. Explicit in willful, or reckless misconduct is an acting of knowledge of danger, or with consciousness that the doing or not doing of some act would likely result in injury. . ." *McNeil v. Munson S. S. Lines*, 184 Ala. 420, 425, 63 So. 992 (1913).

*Id.* at 260.

In the case before this Court, there is no evidence that any of the individual defendants acted in a wanton manner towards the plaintiff student. The evidence clearly establishes that Superintendent Ellison was acting in the line and scope of her employment in supervising Mr. Finlayson and Mr. Baker. Further, the Chilton County Board of Education board members were acting within their duties in supervising Ms. Ellison.

Before a party may be found liable for injuries arising out of alleged wanton conduct, there must be a showing of reckless indifference to the consequences; in other words, the plaintiff must show that the defendant consciously and intentionally did some wrongful act or omitted some known duty that produced the injury. *See Mitchell v. Torrence Cablevision, USA, Inc.*, 806 So. 2d 1254, 1259 (Ala. Civ. App. 2000) (quoting *Ridgeway v. CSX Transportation, Inc.*, 723 So. 2d 600, 608 (Ala. 1998)). The plaintiffs cannot offer and have not offered any evidence that this educator or the board members consciously or intentionally did anything to produce injury to the plaintiff student.

34

In all of the counts claiming wantonness by the individual defendants, the plaintiffs demand punitive damages on behalf of the plaintiff student.  In order to succeed in a claim for punitive damages, it must be proven by "clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." *Ala. Code* § 6-11-20 (2003).

There is simply no evidence before this Court which would support a claim of wantonness against any of the individual defendants.  Mildred Ellison, Ann Glasscock, Alan Childress, Ann Thomas, Joe Mims, Peggy Harris, Curtis Smith and Michael Gothard did not act with any conscious intent to injure the plaintiff student, nor did they act in a manner which could objectively be determined as likely to cause injury.  (See Affidavits of Ellison and Glasscock.)  Therefore, Mildred Ellison, Ann Glasscock, Alan Childress, Ann Thomas, Joe Mims, Peggy Harris, Curtis Smith and Michael Gothard are entitled to summary judgment as to the plaintiffs' claims of wantonness and conscious disregard for others.

## XII.  DEFENDANT EDUCATORS MILDRED ELLISON, DONNIE FINLAYSON AND DARYL BAKER ARE ALSO PROTECTED BY FEDERAL IMMUNITY.

Educators are also protected by federal immunity from claims such as those made by the plaintiffs in this case under the Paul D. Coverdell Teacher Protection Act of 2001, a part of the "No Child Left Behind" Act.  According to § 2366, "Limitation on Liability for Teachers," teachers are immune for any act or omission done on behalf of the school if:

(1) the teacher was acting within the scope of the teacher's employment or

responsibilities to a school or governmental entity;

(2) the actions of the teacher were carried out in conformity with Federal, State, and local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school;

(3) if appropriate or required, the teacher was properly licensed, certified or authorized by the appropriate authorities for the activities or practice involved in the State in which the harm occurred, where the activities were or practice was undertaken within the scope of the teacher's responsibilities;

(4) the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the teacher....

Here, Ms. Ellison, Mr. Finlayson and Mr. Baker were acting within the scope of their employment with the Chilton County Board of Education and were properly licensed to be administrators and a teacher at the middle school level at all times. (Affidavits of Ellison, Finlayson and Baker). All of Ms. Ellison's actions in supervising Mr. Finlayson and Mr. Baker were in conformity with federal, state and local laws. (Affidavit of Ellison). All of Mr. Finlayson's actions in supervising teachers, including Mr. Baker, and counseling and educating students were also in conformity with federal, state and local laws. (Affidavit of Finlayson). All of Daryl Baker's actions in educating students were in conformity with federal, state and local laws. (Affidavit of Baker). Furthermore, none of these three educators acted willfully, criminally or recklessly, with gross negligence, or with a conscious flagrant indifference to the rights of the plaintiff student. (Affidavits of Ellison, Finlayson and Baker). Accordingly, Ms. Ellison, Mr. Finlayson and Mr. Baker are also entitled to protection from all claims against them under federal statutory immunity.

36

XIII. **THERE IS NO EVIDENCE TO SUPPORT THE PLAINTIFFS' ALLEGATIONS THAT ANY DEFENDANT ACTED NEGLIGENTLY AT ANY TIME.**

As previously stated, the plaintiffs make several specific claims against Superintendent Ellison and the board members, claiming that they acted negligently toward the plaintiff student. Several elements must be met in order for a plaintiff to recover on a claim for negligence. To recover for negligence, a plaintiff must prove (1) the existence of a duty on the part of the defendant, (2) a breach of that duty by the defendant, (3) injury to the plaintiff, and (4) that the defendant's alleged conduct was the proximate cause of the injury. The evidence in this case does not establish these elements of negligence. Thus, the individual defendants are entitled to judgment in their favor as to the negligence claims against them.

The plaintiffs cannot establish that any of the or board members owed any duty to the plaintiff student to train the superintendent or advise her regarding the requirements of the IDEA. Further, they cannot show that Ms. Ellison owed them a duty to train Mr. Finlayson or Mr. Baker on the requirements of the IDEA.

The plaintiffs also cannot establish that any of these defendants breached any duty owed to the plaintiff student. The evidence here shows that even if some duty was owed, all of these educators met the standard of care of educators in Chilton County and the State of Alabama. (See Affidavits of Ellison, Finlayson and Baker.) Certainly, based on their actions and the knowledge each of them had at the time, these educators fulfilled any duty owed by

37

them, if a duty was even owed.

In *Stevens v. Chesteen*, the Alabama Supreme Court noted that the mere fact that an incident or injury occurs is not evidence of negligence and negligence cannot be found by inference. 561 So. 2d at 1103. There, the Court held that a teacher's complete absence from his class did not amount to a breach of the duty of reasonable supervision. *Id.* The Court stated that, "The fact that each student is not personally supervised every moment of each school day does not constitute fault on the part of the school board or its employees." *Id.* (quoting *Banks v. Terrebonne Parish School Board*, 339 So. 2d 1295 (La. App. 1976)). Accordingly, the undisputed facts of this case fail to establish any breach of duty.

The evidence therefore fails to establish the required elements of negligence, and Mildred Ellison and the individual members of the Chilton County Board of Education are clearly entitled to summary judgment in their favor as to the plaintiffs' claim of negligence.

## XIV. THE PLAINTIFFS' STATE LAW CLAIMS ARE IN EFFECT AN ATTEMPT TO ASSERT A CLAIM FOR EDUCATIONAL MALPRACTICE WHICH IS NOT A RECOGNIZED CAUSE OF ACTION IN ALABAMA.

In their Complaint, the plaintiffs allege that the defendant educators acted outrageously in their treatment of the student plaintiff and the board members negligently or wantonly supervised Superintendent Ellison and Superintendent Ellison negligently or wantonly supervised Principal Finlayson. However, these sorts of claims are essentially an attempt to assert a claim for educational malpractice, which is not a recognized cause of

action in Alabama. In *Christensen v. Southern Normal School*, 790 So. 2d 252 (Ala. 2001), the Alabama Supreme Court answered a question certified by the United States District Court for this District regarding the standard to apply in determining whether a plaintiff's claims seek to circumvent the principle that there is no cognizable cause of action for educational malpractice in Alabama. In the suit before the federal court, parents of students at a residential school sued the school, alleging that violence frequently occurred in the dormitories, male staff members distributed illegal drugs and alcohol to female students on campus, male staff members had sexual relations with female students, and two minor females were sexually assaulted on the campus. The plaintiffs had not specifically alleged educational malpractice; however, this District asked the Alabama Supreme Court for the proper standard to be used in determining whether the claims were, in reality, educational malpractice claims.

The Alabama Supreme Court first observed that Alabama does not recognize any cause of action for educational malpractice. 790 So. 2d at 255 (citing *Blane v. Alabama Commercial College, Inc.*, 585 So. 2d 866 (Ala. 1991)). The Alabama Supreme Court also listed the public policy concerns that prevent recognition of educational malpractice claims, including that there is no satisfactory standard of care by which a fact-finder could effectively evaluate educators, that the elements of proximate cause and damages would be uncertain, that recognition of educational malpractice claims would open floodgates of litigation against schools, and that such cases would embroil the courts in overseeing the

daily operations of schools. *Id. (*citing *Ross v. Creighton University*, 957 F.2d 410, 414 (7th Cir. 1992)). The Court then held as follows:

> If the parents' negligence claims raise questions concerning the reasonableness of [the school's] conduct in providing educational services, then the claims improperly assert a claim of educational malpractice. Likewise, if the plaintiffs' negligence claims require an analysis of the quality of education received and in making that analysis the fact finder must consider principles of duty, standards of care, and the reasonableness of the defendant's conduct, then the plaintiffs have asserted an educational-malpractice claim.

*Id.* (Internal citations omitted.) The plaintiffs' claims in this case directly question the reasonableness of these educators and board members' conduct in providing educational services, i.e. in supervising administrators and a teacher and educating a student. Evaluation of the plaintiffs' claims clearly would necessitate an analysis of their duties, the standards of care applicable to them, and the reasonableness of their conduct. Under the standards stated by the Alabama Supreme Court in *Christensen v. Southern Normal School*, the plaintiffs' claims here clearly are for educational malpractice, and the Complaint fails to state a recognized cause of action in this state. The individual defendants, therefore, are clearly entitled to summary judgment in their favor as to all claims against them.

## XV.  THE PLAINTIFFS STILL HAVE A REMEDY, DESPITE THE IMMUNITY POSSESSED BY THE DEFENDANTS.

The Alabama Legislature has funded the State Board of Adjustment because sovereign immunity prevents claims against the state and its employees for which there may be a moral but not a legal obligation to pay. The Alabama Supreme Court has held that sovereign

40

immunity prohibits civil suits against a county school board, but the Board of Adjustment has jurisdiction to hear such claims. *Hawkins v. State Bd. of Adjustment*, 242 Ala. 547, 7 So. 775 (1943). The Alabama Court of Civil Appeals observed that "[t]he Board of Adjustment has jurisdiction over claims against the state that are not justiciable in the courts because of the state's constitutional immunity from being made a defendant." *Vaughn v. Sibley*, 709 So. 2d 482, 486 (Ala. Civ. App. 1997).

As the defendants have demonstrated, the plaintiffs' state law claims against them are barred by the doctrine of state-agent immunity. The plaintiffs' claims are not justiciable in this Court, but the State Board of Adjustment has jurisdiction to hear plaintiffs' claims and may award damages. While immunity prevents the plaintiffs from recovery against these defendants, the plaintiffs still have a remedy before the Board of Adjustment.

## XVI.  SUMMARY JUDGMENT IS DUE TO BE GRANTED ON THE PLAINTIFF PARENTS' CLAIM FOR LOSS OF SERVICES SINCE IT IS DERIVATIVE OF THE PLAINTIFF STUDENT'S CLAIMS.

First, the plaintiff parents' claim for loss of services of their child, the plaintiff student, is not properly before this Court, as there is no indication in the Complaint that they bring this Complaint individually. (In fact, the Court computer system shows there to be only claims brought on the plaintiff student's behalf.) Further, even if they were allowed to bring such a claim, summary judgment is due to be granted as to a loss of services claim. A loss of the plaintiff student's services claim is entirely derivative of the claims of the allegedly injured student. *Ex parte N.P.*, 676 So. 2d 928 (Ala. 1996). A parent's right of recovery for a loss

of services claim depends upon a showing of liability on the part of the defendant. To recover, the parent must prove that her child's injury was caused by the defendant's wrongful acts and that, as a result, he or she lost her child's services from the time of the injury until some point thereafter, and there exists some pecuniary value for these loss of services. *Long v. Booe*, 106 Ala. 570, 17 So. 716.

In *Swartz v. United States Steel Corp.*, 293 Ala. 439, 304 So. 2d 881 (1974), the Alabama Supreme Court explained:

> [W]here the husband's case has been terminated on the merits adversely to him, the wife's right to recover for loss of consortium is barred. This is necessarily true because her action is derivative merely and the spouses being in privity, the judgment in the husband's case is *res judicata* as to her.

293 Ala. at 448, 304 So. 2d at 889. (Justice Faulkner concurring specially). Clearly, the same would hold true in the case of a loss of services claim by a parent. The Board and individual educators and Board members have shown in the preceding sections their entitlement to summary judgment of the claims of the plaintiff student. The judgment in the defendant Board and educators' favor as to those claims necessarily disposes of the derivative claim of the plaintiff parents, and thus, it is due to be dismissed.

## XVII. <u>THE PLAINTIFFS' REQUEST FOR RELIEF FAILS TO PROPERLY STATE A CLAIM FOR DECLARATORY RELIEF.</u>

Paragraphs 35, 36 and 37 of Plaintiffs' Complaint basically request the Court enter an order stopping the defendants from violating federal law. These demands for injunctive relief

42

are easily construed as requests by the plaintiffs to require the defendants to 'obey the law.'

The Eleventh Circuit "has repeatedly held that 'obey the law' injunctions are unenforceable."

*Florida Association of Rehabilitation Facilities, Inc. v. State of Florida Dept. of Health and*

*Rehabilitative Services*, 225 F.3d 1208, 1222 (11th Cir. 2000). An injunction ordering any

government agency to "obey the law" serves little purpose. Accordingly, the Eleventh Circuit

reasons that district courts who deny such injunctions are due to be affirmed. *Thomas v.*

*Roberts*, 261 F.3d 1160, 1176 (11th Cir. 2001). These type of "obey the law" injunctions are

unenforceable because there is no specific instruction for the defendant and because an

injunction "must be framed so that those enjoined know exactly what conduct the court has

prohibited and what steps they must take to conform their conduct to the law." *Florida*

*Association of Rehabilitation Facilities, Inc.*, supra at 1223. Further, a restraining party facing

such an injunction is not given fair notice of what conduct risks contempt. *Hughey v. J.S.M.*

*Development Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996). In *Hughey*, the Eleventh Circuit

wrote:

> Broad, non-specific language that merely enjoins a party to obey the law or
> comply with an agreement . . . does not give the restrained party fair notice of
> what conduct will risk contempt." Because of the possibility of contempt, an
> injunctions "must be tailored to remedy the specific harm shown rather than to
> enjoin all possible breaches of the law." An injunction must therefore contain
> "an operative command capable of . . . enforcement."

*Id.* (citations omitted).

Finally, Rule 65(d) states, in pertinent part:

43

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Fed.R.Civ.P. 65(d). Thus, an injunction ordering a defendant to "obey the law" does not meet the specificity requirements of Rule 65(d) of the Federal Rules of Civil Procedure, which renders it incapable of enforcement, according to the Eleventh Circuit. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999). Here, the requests for injunctive relief, as previously cited, fail to meet the specificity requirements of Rule 65(d).

Based on the foregoing, the plaintiffs' requests for injunctive relief are due to be denied.

## CONCLUSION

For the above stated reasons, Defendants Chilton County Board of Education, Mildred Ellison, Ann Glasscock, Alan Childress, Ann Thomas, Joe Mims, Peggy Harris, Curtis Smith, Michael Gothard, Daryl Baker, and Donnie Finlayson are entitled to summary judgment as to all claims against them in the plaintiffs' complaint.

44

Respectfully submitted,


/s/ *Mark S. Boardman* (ASB-8572-B65M)


/s/ *Katherine C. Hortberg* (ASB-5374-B34K)
BOARDMAN, CARR & HUTCHESON, P.C.
400 Boardman Drive
Chelsea, Alabama 35043-8211
(205) 678-8000
(205) 678-0000 FACSIMILE


## CERTIFICATE OF SERVICE

I hereby certify that on **February 14, 2006**, I electronically filed and sent via U.S. mail the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following :


**VIA U.S. MAIL**

George E. Jones, III
Post Office Box 9
Selma, AL 36702-0009


*s/Katherine C. Hortberg*

Of Counsel