# AFFIDAVIT OF DON FINLAYSON, JR.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DISTRICT

| | |
|---|---|
| BENNY L. WRIGHT and KATHERINE E. WRIGHT, as parents and next friends of JESSICA W., a minor <br><br> Plaintiffs, <br><br> v. <br><br> THE CHILTON COUNTY BOARD OF EDUCATION, et al. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 2:05-CV-0699-C |

## AFFIDAVIT OF DON FINLAYSON, JR.

STATE OF ALABAMA    )
                    )
CHILTON COUNTY      )

COMES NOW the affiant, Don Finlayson, Jr., having been duly sworn and deposes and says the following:

My name is Don Finlayson, Jr.. At all times relevant to this suit, I was employed by the Chilton County Board of Education as Principal of Clanton Middle School in Clanton, Alabama.

I received an B.A. degree in physical education from Huntington College and a B.A. degree in business from Huntingdon College in 1977. I also received a Master's degree in physical education in 1980 from the University of Montevallo, and a certificate of administration that same year. I received a Ed.S. in School Administration in 1987. I was first certified as a school teacher by the State of Alabama in 1977. Since obtaining these certifications, I have met or exceeded the continuing education requirements for school teachers and administrators in Alabama in every year in which I was required to obtain such continuing education credits.

As of the current school year, I have been employed as an educator with the Chilton County

Board of Education for 29 years.

As a result of my education, certification, training and experience, I am familiar with the standards of care required of school teachers and administrators in Clanton, Chilton County and in the State of Alabama. I met those standards of care at all times relevant to this litigation. On occasion, my job requires me to counsel or discipline students. I have never disciplined Jessica Wright, however. Once I counseled Jessica Wright about missing class. On that occasion, I used my discretion and judgment in discussing with Jessica Wright her absence from class to visit her mother, who was a substitute teacher in another classroom. Students are supposed to stay in their assigned classes. I counseled Jessica Wright on this occasion to remain in her designated classroom for the full class period. I never raised my voice to Jessica. I never told Jessica that "If she was going to be sick all the time, and going to be such a 'teaty baby,' then she needed to stay home." I also never told her anything to the effect that she was having a pity party for herself to get her way or that I was tired of her using her illness as an excuse to miss class. I never yelled at Jessica Wright to get back to class and to never let this happen again. On the day after Jessica Wright returned to school after her surgery, I did not think she was lying about having surgery. My counseling session with Jessica Wright did not in any way effect her education, ability to learn, or her illness.

Except for the special privileges Jessica Wright enjoys, she is treated like any other student. Jessica Wright is a full time student at Clanton Middle School. She is discreet and does not talk about her medical condition, and all of the school staff and educators who know about her condition are discreet about it as well. To look at Jessica Wright, one would not know that she has a medical condition. Jessica Wright appears to be a normal, typical Middle School student. Jessica Wright is able to self administer her own medication during the school day. She is physically able to

2

participate in cheerleading, band, physical education class, dance team and all other school activities. She does not use a wheelchair, cane, or any appliance at school. She is able to participate fully in class, without special accommodation. She sat through an entire day of depositions in this case making no comment about discomfort. I have never seen or been told of any discriminatory action taken against Jessica Wright. I never saw any teacher prohibit Jessica Wright access to their rooms. I have never heard students make fun of Jessica Wright. I have never seen students or teachers treat Jessica Wright poorly because of her coughing. I have never treated Jessica Wright poorly because of her coughing. I have never made jokes about Jessica Wright's cystic fibrosis. I have never been around Jessica Wright when she was emitting a foul smelling gas. I have never seen or heard of any teacher denying Jessica Wright the opportunity to leave the classroom to cough up mucus or to get a candy bar during cheerleading tryouts.

I have never received a verbal or written request from the Wrights or anyone on their behalf for an IEP or due process hearing. I have also never received a written or verbal complaint regarding a failure to provide an IEP for Jessica Wright. Neither Jessica Wright nor her parents have requested tutoring. Tutoring is available to all students at Clanton Middle School. There is no charge or cost for this tutoring. The school publicizes the availability of tutoring. I know of no reason why Jessica Wright did not avail herself of this tutoring. Certainly, neither she nor anyone on her behalf asked me about obtaining tutoring. I understand that Jessica Wright is a good student, who consistently maintains a C or higher average in all of her classes. I never received any information from another school district that they provided supplemental aides or special services under the IDEA to Jessica Wright.

I have a 26 year old son with Downs Syndrome. I would never discriminate against or say

3

hurtful things to a student with a medical condition. I spoke with Mr. Wright about my son's condition because I wanted him to know that I know what it is like to have a child with a medical condition.

I was acting within the line and scope of my employment with the Chilton County Board of Education at all times relevant to the allegations in this suit. I believe that all of my actions were carried out in conformity with all applicable federal, Alabama and local laws, as I understand them. I acted with the students and faculty of Clanton Middle School's best interests in mind at all times. I used my judgment in administering Clanton Middle School, including supervising its teachers and students.

All of the teachers and administrators at Clanton Middle School are permitted to use their discretion and judgment in determining whether to allow a student to interrupt class by leaving to use the restroom. When I was informed by the Wrights that their daughter needed to be allowed to use the restroom as freely as possible and they felt she had been prohibited that access by Mr. Baker, I brought the request to Mr. Baker's attention. As far as I know, Mr. Baker did not know prior to my speaking with him about Jessica's parents' request, that Jessica Wright needed any such access to the restroom. I never received any further complaints from either Jessica Wright or her parents that she was not allowed access to the bathroom. I never told Katherine Wright that if she checked her daughter out of school for dance team tryouts, Jessica Wright would not be allowed to stop by the school bathroom on her way out of the building to change her clothes.

Furthermore, the judges for the 2005-06 cheerleading tryouts were not relatives of the contestants. In fact, one student, who told other students that she was the cousin of a judge from California, later told me and several other educators that she did say this but was not related to any

4

judge. The cheerleading sponsor, who was on the judging committee during the 2005-06 selection, has no personal relationship with one of the students who made the squad, even though they are related by marriage. Prior to the tryouts, we evaluated whether there were any conflicts between the judges and any contestants and determined that we conformed with the judge selection and cheerleading tryout policy. Since Jessica Wright does not have an obvious medical condition, then the medical condition would not have been known by the cheerleading judges and, thus, could not affect their judging of her cheerleading ability during any of the cheerleader tryouts.

Like the situation with Jessica Wright, there have been several occasions when students have made cheerleading one year and not the next. There have also been multiple occasions when students made cheerleader at one school and not another. My own daughter did not make cheerleading either year that she was a student at the middle school (while I was principal or vice-principal), but she did make the high school squad. There was another student who was on the cheerleading squad with Jessica Wright during their seventh grade year, who also did not make the eighth grade cheerleading squad. This student is the daughter of the President of the Chilton County Board of Education, Ann Glasscock. This student, along with Jessica Wright, tried out for the dance team after not making the eighth grade cheerleading squad, but Jessica Wright made it and Ms. Glasscock's daughter did not.

The daughter of the cheerleading sponsor at Chilton County High School did not make cheerleader either year at the middle school level, but did make it at the high school. Two of the high school cheerleaders who lead the 2005-06 tryout clinic did not make the middle school squad either year. The daughter of an intermediate school's teacher made cheerleader in the seventh grade, but not in the eighth. Like Jessica Wright, she then made the eighth grade dance team. The daughter

5

of a high school teacher did not make cheerleader either year at the middle school, but she did make the high school squad. There were probably other instances when students made cheerleader one year and not another. Jessica Wright was not the only student to have this happen to her. There was no discrimination against Jessica Wright during the cheerleading selection process.

The foregoing affidavit is based upon my personal knowledge and is true and accurate. I am over nineteen years of age and not otherwise disqualified from giving testimony under oath.

This the 13th day of February, 2006.

_____
Don Finlayson, Jr.


STATE OF ALABAMA   )
                   )
CHILTON COUNTY     )

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Don Finlayson, Jr., whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he executed the same voluntarily on the day the same bears date.

Given under my hand this 13th day of February, 2006.

_____
Notary Public

My commission expires: 2-4-2010