IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DISTRICT

| | |
|---|---|
| BENNY L. WRIGHT and KATHERINE ) <br> E. WRIGHT, as parents and next ) <br> friends of JESSICA W., a minor ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE CHILTON COUNTY BOARD OF ) <br> EDUCATION, et al. ) <br> ) | Case No. 2:05-CV-0699-C |

**DEFENDANTS' REPLY TO PLAINTIFFS' CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants identified as Chilton County Board of Education, Mildred Ellison, Ann Glasscok, Alan Childress, Ann Thomas, Joe Mims, Peggy Harris, Curtis Smith, Michael Gothard, Daryl Baker, and Donnie Finlayson and adopt all arguments raised in their Motion to Dismiss, Motion for Summary Judgment and supporting briefs, incorporate by reference their Motion to Strike Plaintiffs' Consolidated Response in Opposition to Motion for Summary Judgment and Affidavit of Brandon Blankenship, and provide the following reply to Plaintiffs' Consolidate Response in Opposition to their Motion for Summary Judgment.

**I.    PLAINTIFFS CONCEDE THAT THE PLAINTIFF STUDENT HAS NO PROPERTY RIGHT IN BECOMING A CHEERLEADER.**

In paragraph 8 of their Statement in Opposition to Motion for Summary Judgment, plaintiffs concede that the plaintiff student does not have a property interest in being selected as a cheerleader at Clanton Middle School, and thus, this claim does not constitute a constitutional or federal violation under 42 U.S.C. § 1983. However, even after this concession, plaintiffs assert that the defendants violated the Board's rules of cheerleading selection, and this somehow supports their

assertion that student was denied services under the IDEA. However, the defendants provided substantial evidence that the plaintiff student was not discriminated against during the cheerleading selection process, which evidence the plaintiffs clearly failed to rebut.

## II. PLAINTIFFS ALSO CONCEDE THAT THERE IS NO CONSTITUTIONAL VIOLATION BASED ON THEIR ALLEGATIONS THAT THE PLAINTIFF STUDENT WAS DENIED ACCESS TO THE RESTROOM.

In paragraph 9 of their Statement in Opposition to Motion for Summary Judgment, plaintiffs concede that they cannot allege a constitutional violation based on the defendants' supposed refusal to allow the plaintiff student access to the restroom during classroom instructional time. However, once again, with no evidentiary support whatsoever, the plaintiffs argue that this allegation lends support to their argument that the plaintiff student was denied services under the IDEA. The defendants submitted substantial evidence in support of their Motion for Summary Judgment that no such continued denial of access to the restroom occurred.

## III. PLAINTIFFS CONCEDE THEIR STATE LAW CLAIMS AGAINST THE CHILTON COUNTY BOARD OF EDUCATION.

In paragraph 15 of their Statement in Opposition to Motion for Summary Judgment, plaintiffs concede that they do not seek monetary damages against the Chilton County Board of Education as to their state law claims. As previously argued in the plaintiffs' Motion for Summary Judgment, a county board of education is entitled to sovereign immunity as to all state law claims against it. Therefore, the plaintiffs are correct in their concession that the Board is entitled to the protection of sovereign immunity and summary judgment should be granted in its favor as to the state law claims against it.

IV. **PLAINTIFFS CONCEDE THAT THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO THE OFFICIAL CAPACITY CLAIMS AGAINST THEM.**

In subheading IV of their response, page 30, plaintiffs state that their claims against the individual defendants are not redundant of their claims against the Board because the individual defendants are liable for damages, "if at all, only in their individual capacities." Thus, the above language implies that the plaintiffs are also conceding that the official capacity claims against the individual defendants are due to be dismissed.

V. **DEFENDANT EDUCATORS MILDRED ELLISON, DONNIE FINLAYSON AND DARYL BAKER ARE ENTITLED TO FEDERAL IMMUNITY.**

The plaintiffs failed to respond at all to defendants' argument that Defendants Mildred Ellison, Donnie Finlayson and Daryl Baker are entitled to the protection of federal immunity under the "No Child Left Behind Act." Thus, the defendants assume that the plaintiffs are also conceding this ground for summary judgment. (This defense applies only to professional, certified educators. The other individual defendants are members of the Chilton County Board of Education.)

Educators are protected by federal immunity from claims such as those made by the plaintiffs in this case under the Paul D. Coverdell Teacher Protection Act of 2001, a part of the "No Child Left Behind" Act. According to § 2366, "Limitation on Liability for Teachers," teachers are immune for any act or omission done on behalf of the school if:

> (1) the teacher was acting within the scope of the teacher's employment or responsibilities to a school or governmental entity;
> (2) the actions of the teacher were carried out in conformity with Federal, State, and local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school;
> (3) if appropriate or required, the teacher was properly licensed, certified or authorized by the appropriate authorities for the activities or practice involved in the

>State in which the harm occurred, where the activities were or practice was undertaken within the scope of the teacher's responsibilities;
>(4) the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the teacher....

Here, Ms. Ellison, Mr. Finlayson and Mr. Baker were acting within the scope of their employment with the Chilton County Board of Education and were properly licensed to be administrators and a teacher at the middle school level at all times. (Affidavits of Ellison, Finlayson and Baker). All of Ms. Ellison's actions in supervising Mr. Finlayson and Mr. Baker were in conformity with federal, state and local laws. (Affidavit of Ellison). All of Mr. Finlayson's actions in supervising teachers, including Mr. Baker, and counseling and educating students were also in conformity with federal, state and local laws. (Affidavit of Finlayson). All of Daryl Baker's actions in educating students were in conformity with federal, state and local laws. (Affidavit of Baker). The plaintiffs did not provide any evidence to refute the above. Furthermore, none of these three educators acted willfully, criminally or recklessly, with gross negligence, or with a conscious flagrant indifference to the rights of the plaintiff student. (Affidavits of Ellison, Finlayson and Baker). The plaintiffs also failed to provide evidence which showed that Ellison, Finlayson or Baker acted willfully, criminally or recklessly, with gross negligence, or with a conscious flagrant indifference to the rights of the plaintiff student. Accordingly, Ms. Ellison, Mr. Finlayson and Mr. Baker are clearly entitled to protection from all claims against them under federal statutory immunity.

## VI. PLAINTIFFS' NARRATIVE STATEMENT OF FACTS AND ARGUMENT ARE NOT SUPPORTED BY EVIDENCE.

Plaintiffs claim to have presented to the court in their Narrative Statement of Facts "either undisputed facts or the facts taken in the best light to the plaintiffs' claims raised in their complaint."

(Pl.'s Response, p. 7). However, plaintiffs cannot rely on the mere allegations in their complaint to rebut defendants' motion for summary judgment. F.R.C.P. 56(e); see also *Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997). The plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed. 2d 538 (1986). In this case, plaintiffs have rested upon the "mere allegations" from their Complaint throughout much of their Narrative Statement of Facts, (See A., ¶ 1, 3; B., ¶ 1; C., ¶ 6, 7), and Argument, (I., p. 25-26; III., p. 29-30; V., p. 34; VI., p. 35; VII., p. 38). Clearly, restating the allegations from their Complaint does not constitute "affirmative evidence" of material factual conflicts sufficient to defeat a properly supported motion for summary judgment. The plaintiffs also cite to inadmissible hearsay evidence in their Narrative Summary of Facts. See Motion to Strike filed simultaneously herewith. Furthermore, in the body of their Argument, plaintiffs fail to cite for this Court one piece of evidence which supports any of their claims. In fact, the only "facts" presented in the body of the plaintiffs' Argument are from the Complaint.[1] The plaintiffs' Argument is thus not in compliance with this Court's Scheduling Order, which requires that "In all briefs filed by any party relating to the motion, the discussion of the

---

[1] The defendants also note for the Court that the plaintiffs' Argument portion of their Consolidated Response in Opposition to Defendants' Motion for Summary Judgment seems to be the same as or extremely similar to that filed by the plaintiffs in response to defendants' Motion to Dismiss. In preparing their brief in support of Motion for Summary Judgment, as instructed by this Court, Defendants incorporated arguments from their Motion to Dismiss, a reply to plaintiffs' response to their Motion to Dismiss and in favor of summary judgment being granted for all defendants. Thus, most of the plaintiffs' arguments in their Response were addressed in the defendants' brief in support of motion for summary judgment. Therefore, for the sake of brevity, defendants have not repeated their arguments from their original brief in support of their Motion for Summary Judgment.

evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in a supporting deposition or document." Since the plaintiffs have failed to meet their burden, defendants are entitled to summary judgment in their favor as to all claims against them.

### VII. PLAINTIFFS FAILED TO PRESENT EVIDENCE WHICH ESTABLISHES THAT THE PLAINTIFF STUDENT IS ENTITLED TO SPECIAL EDUCATION SERVICES.

Plaintiffs have failed to show that the plaintiff student is in need of special education and related services under the IDEA. The plaintiff student has passed all of her classes every year she has been enrolled as student in the Chilton County School System. (Depo. of J. Wright, p. 178, l. 6-8.) In fact, she was on the A-B Honor Roll in the seventh grade, she has made all As, Bs and Cs in the eighth grade, and in the seventh and eighth grades, she has been a member of the Beta Club, a scholastic honor society, which only admits students with good grades. (Depo. or J. Wright, p. 27, l. 7-p. 28, l. 23; p. 42, l. 4-13; p. 43, l. 4-19.) The times that she is absent because of her medical condition, the plaintiff student has been able to make up her classwork and tests without problem. (Depo. of J. Wright, p. 82, l. 19-p. 83, l. 5; p. 104, l. 18-p. 105, l. 1; p. 116, l. 13-22.) The plaintiff student's medical condition has not affected her academic education at Clanton Middle School. (Affidavits of Finlayson and Baker.) The plaintiffs did not provide any evidence to the contrary. Physically, the plaintiff student can attend all classes (even physical education), can participate in all classes (even physical education), gives herself her own medicines, and uses no appliances such as a wheelchair or cane. (*Id*).

The IDEA requires local school districts to "locate, identify, and evaluate" all students with disabilities. 20 U.S.C. §1412(a)(3)(A). "Student with a disability" is a student who has been

evaluated to have one of the categories of disability, and who needs special education and related services. §§ 1401. A student who has an impairment, but who only needs a related service and not special education, is not a "student with a disability" within the meaning of the law. 34 C.F.R. § 300.7(a)(2). Special education is defined as "specially designed instruction." §§ 300.26(a)(1). Specially designed instruction means: "[A]dapting, as appropriate to the needs of an eligible child under this part, the content, methodology, or delivery of instruction-(i) to address the unique needs of the child that result from the child's disability; and (ii) to ensure access of the child to the general curriculum, so that he or she can meet the educational standards within the jurisdiction of the public agency that apply to all children." §§ 300.26(b)(3). Therefore, in order to qualify as a "student with a disability" pursuant to the IDEA, the plaintiff student must require "specially designed instruction" in order to have access to, and benefit from, the general educational curriculum.

The plaintiffs refer this Court to pages 15 and 16 of the Narrative Summary of Facts in their argument that the plaintiffs have submitted substantial evidence that the plaintiff student is entitled to special education services under the IDEA. (Plaintiffs' Response, pp. 2-3). However, a review of the "facts" from these pages does not uncover any evidence which rebuts the defendants' argument that the plaintiff student's academic education is affected by her medical condition. The parents' alleged conversations with educators at Clanton Middle School do not prove that the plaintiff student is or was entitled to special education services. (Pl.'s Response, p.15-16). The plaintiff student's being counseled by the principal for missing classtime to visit her mother's classroom when she was substitute teaching is not evidence in support of the plaintiffs' argument that the plaintiff student is entitled to special education services. (Pl.'s Response, p. 16).

Therefore, since the plaintiffs did not and cannot show that the plaintiff student is even

eligible for special education services under the IDEA, the plaintiffs' argument that there has been a "total and utter failure on the part of the Chilton County Board of Education to comply whatsoever with any of the provisions of IDEA" is due to fail. Furthermore, the burden of proof in an administrative hearing challenging an IEP is placed upon the party seeking relief, here the plaintiffs, pursuant to a recent decision from the United States Supreme Court, *Schaffer v. Weast*, 546 U.S. _____ (Nov. 14, 2005) Case No. 04-698. Clearly, the plaintiffs should be required to prove this burden to a due process hearing officer and a specific administrative finding be made before they can bring their claims before this Court. The defendants are therefore entitled to summary judgment as to plaintiffs' claim of violation of the IDEA.

**VIII.  THE PLAINTIFFS HAVE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES REQUIRED UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT ("IDEA").**

In their response, plaintiffs claim that the Defendant Chilton County Board of Education failed or refused to provide the plaintiff student with an appropriate and fully integrated public education and failed or refused to plan and develop an Individualized Education Plan (IEP) for the plaintiff student. (Pl.'s Response, p. 25). However, the plaintiffs are first required to follow the specific process set out under the IDEA before bringing such a claim in federal court. The plaintiffs have failed to exhaust their administrative remedies under the IDEA. The Individuals with Disabilities Education Act ("IDEA") is a comprehensive federal education statute which grants disabled students the right to a public education and conditions a state's federal funding on its having in place a policy that ensures that a "free appropriate public education" is available to all children with disabilities. 20 U.S.C. § 1412(a)(1). The plaintiffs claim that the minor plaintiff was denied

access to a free, appropriate public education. (Pl.'s Response, p. 25). The plaintiffs, however, have failed to exhaust the administrative remedies required under IDEA.

The IDEA provides a scheme of procedural protections under which parents are entitled to:

(1)   Examination of all relevant records pertaining to evaluation and educational placement of their child,

(2)   Prior written notice whenever the responsible educational agency proposes, or refuses, to change the child's placement,

**(3)   An opportunity to present complaints concerning any aspect of the local agency's provision of a free, appropriate public education, and**

**(4)   An opportunity for an "impartial due process hearing" with respect to any such complaint.**

*N.B. v. Alachua County School Bd.*, 84 F.3d 1376, 1378 (11th Cir. 1996) (quoting *Honig v. Doe*, 484 U.S. 305, 312 (1988) (Emphasis added)).

If the plaintiffs have any complaint about the alleged actions or inactions of the Board or its employees or members, they are required to invoke the procedural protections of the IDEA before proceeding further under any statute. The plaintiffs first are required to request an evaluation and meeting of an IEP team for the plaintiff student. 20 U.S.C. § 1414. The plaintiffs failed to make such a request on behalf of their daughter. (Depo. of K. Wright, p. 103, l. 12-p. 105, l. 13; Depo. of B. Wright, p. 61, l. 17-p. 62, l. 20; Affidavit of Ellison.) The plaintiffs include in their Narrative Summary of Facts a section entitled "Notice to Defendants of [the plaintiff student's] Disability." However, none of the "facts" cited within this subheading prove that the Chilton County Board of Education was put on notice of a request by these parents for an IEP for the plaintiff student.

9

The plaintiff mother testified that the plaintiff student had an IEP at a previous school in another school system in the fourth grade. (Pl.'s Response, p. 11) Aside from this testimony, there is no evidence presented by the plaintiffs that such an IEP ever existed. In fact, if such an IEP had been prepared for the plaintiff student, it should have been made a part of the plaintiff student's permanent record and sent to the new school system, when she transferred to Clanton County schools in the fifth grade. No such documentation was included in the plaintiff student's records. (Aff. of Finlayson) The plaintiff mother testified that she did not notify anyone in the Chilton County schools about the alleged previous IEP because she assumed the previous school system would mail it with the plaintiff student's records. (Depo. of K. Wright, p. 106, l. 6-12) Clearly, the plaintiff mother's statement that the plaintiff student had an IEP and "a 504, something like that, plan" at another school in a different county (Depo. of K. Wright, p. 52, l. 5-11), does not constitute evidence that an IEP was ever prepared for the plaintiff student or that anyone at the Chilton County Board of Education had notice of it, if it did.

Furthermore, whether the plaintiff student's doctors sent information on the plaintiff student's medical condition to the Chilton County schools does not establish that the Board was on notice of the parents' request for an IEP to have their daughter evaluated for special education services. (Pl.'s Response, p. 11) As established above, a medical condition does not qualify a student as a "student with a disability" in need of "specially designed instruction" under the IDEA. The plaintiffs did not include as evidence in support of their response in opposition to the Motion for Summary Judgment the documents which they allege were sent to the schools by the doctors or the contents of those documents. Thus, the mother's representation that such documentation was sent, with no evidence of the contents of the paperwork, does not constitute notice to the Board of

a request for an IEP.

The plaintiffs cite to the plaintiff mother's testimony that she made verbal requests to school officials seeking special services for the plaintiff student. However, the plaintiff mother admitted that she did not specifically ask for an IEP for her daughter. As stated above, there is no evidence that this student qualified as a "student with a disability" in need of "specially designed instruction."

There is no evidence presented by the plaintiffs that these parents followed the correct procedure in requesting an IEP for the plaintiff student. The Chilton County Board of Education student handbook provides information on the contact person for special education services. (Aff. of Ellison) The plaintiff student received a copy of the student handbook every year she was at Clanton Middle School, and her mother signed the student/parent acknowledgment page that they have read it. (Aff. of J. Wright, p. 97, l. 13- p. 99, l. 7) The plaintiff mother keeps the student handbook. (Aff. of J. Wright, p. 99, l. 1-7) Neither of the plaintiff parents ever contacted the superintendent or the special education coordinator about whether the student was eligible for an IEP. (Depo. of K. Wright, p. 103, l. 12-p. 105, l. 13; Depo. of B. Wright, p. 61, l. 17-p. 62, l. 20; Affidavit of Ellison.) The plaintiff mother's testimony regarding alleged conversations with a special education teacher's aide about her daughter's medical condition does not constitute evidence that the plaintiffs made a request for an IEP. (Pl.'s Response, pp. 11-12; Aff. of Sanders). The special education teacher's aide is obviously not the appropriate person to request a student be evaluated for special education services under the IDEA. (Aff. of Sanders)

Plaintiffs also include testimony from the plaintiff mother and father about alleged discussions with Ms. Glasscock, including one at a Mexican restaurant, in support of their contention that a request was made for an IEP. (Pl.'s Response, pp. 13-14) However, Chilton County Board

11

Member Ann Glasscock is also not the appropriate person to request a student be evaluated for special education services. (Aff. of Glasscock) The testimony cited also does not establish that a specific request for an IEP was ever made to the appropriate person. A claim that they discussed the plaintiff student's medical condition with a teacher's aide and the mother of one of their daughter's friends does not prove that the plaintiffs made a request for an IEP on behalf of the plaintiff student. As stated above, an allegation that information from the doctors was given to Principal Finlayson does not prove that a request for an IEP was made. (Pl.'s Response, p. 12) The reports by the plaintiff mother to the principal regarding the incidents in Mr. Baker and Ms. Mitchell's classes also does not constitute a verbal request by the mother to the appropriate person for an IEP. (Pl.'s Response, p. 12). Further, the hiring of a nurse does not constitute a special education service being provided to the plaintiff student currently, which was previously denied. (Pl.'s Response, p. 13) The plaintiff student's needs changed this past school year when she diagnosed with diabetes, and thus, the Chilton County Board of Education provided a nurse on site at the school to monitor the student's blood sugar. (Depo. of J. Wright, p. 109, l. 23- p. 111, l. 16).

      The plaintiffs also failed to prove that they ever presented a complaint to the Chilton County Board of Education once they felt the plaintiff student had been denied any rights under the IDEA. The plaintiff father, in fact, admitted that such a complaint was never made. (Depo. of B. Wright, p. 62, l. 21-p. 63, l. 1.) However, even if there were such evidence of a complaint, the plaintiffs are required thereafter to request a due process hearing. The plaintiffs never requested such a hearing. (Depo. of K. Wright, p. 111, l. 22-p. 112, l. 9; Depo. of B. Wright, p. 63, l. 2-20.) The plaintiffs claim in their response that the plaintiff mother "understood that a letter to school officials from her attorney in Birmingham constituted a request for a due process hearing. (Pl.'s Response, p. 12)

12

However, the letter was not presented into evidence by the plaintiffs, and thus, the plaintiffs cannot establish that such letter was a written request for a due process hearing. The defendants, however, provided evidence that the letter was not a request for a due process hearing, but instead was in regard to the plaintiff student's not being selected for the cheerleading squad. (Aff. of Ellison). The Superintendent never received a request for a due process hearing from the plaintiff parents. (Aff. of Ellison). Clearly, the plaintiffs have failed to show that they or anyone on their behalf ever made a request for a due process hearing.

The IDEA imposes the additional procedural step of further review by the state educational agency which the plaintiffs likewise failed to exhaust. 20 U.S.C. § 1415(c). Only after all those procedural steps had been exhausted would the plaintiffs have been entitled to seek judicial review. *Id.* at § 1415(e)(2). Obviously, the plaintiffs have not presented substantial evidence that they completed any of the procedural steps set out in the IDEA such that their claims under the IDEA are properly before this Court. Thus, the defendants are entitled to summary judgment in their favor as to Counts I and II of plaintiffs' Complaint.

IX.  **PLAINTIFFS HAVE FAILED TO SHOW THAT THEY FALL UNDER EITHER EXCEPTION TO THE EXHAUSTION OF ADMINISTRATIVE REMEDIES REQUIREMENT UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT.**

The Eleventh Circuit has held:

The philosophy of the [IDEA] is that plaintiffs are required to utilize the elaborate administrative scheme established by the [IDEA] before resorting to the courts to challenge the actions of the local school authorities. Key reasons for requiring the exhaustion of administrative remedies are as follows: 1) to permit the exercise of agency discretion and expertise on issues requiring these characteristics; 2) to allow the full development of technical issues and a factual record prior to court review; 3) to prevent deliberate disregard and circumvention of agency procedures established

>by Congress; and 4) to avoid unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

*N.B. v. Alachua*, 84 F.3d at 1378 (brackets in original) (internal citations omitted).

In their Response, plaintiffs claim that they are excused from following the administrative procedures set forth by the Individuals with Disabilities Education Act ("IDEA"). (Pl.'s Response, p. 24). Citing to cases from the district court of New York and the Fourth District, plaintiffs argue that there are three reasons when the exhaustion requirement may be excused: where it would be futile; where the agency has adopted a policy or pursued a practice that is contrary to law; or where it is improbable that adequate relief could be obtained. The plaintiffs offer no evidence to support any of these three grounds. Further, these cases are not binding precedent in the Eleventh Circuit. The Eleventh Circuit has held that the exhaustion requirement is only excused where resort to administrative remedies would be futile or inadequate. *Association for Retarded Citizens of Alabama v. Teague,* 830 F. 2d 158, 160 (11th Cir. 1987). These plaintiffs have failed to present any evidence to show that they fall under either exception. The reason for the exhaustion requirement is "[t]o prevent deliberate disregard and circumvention of agency procedures established by Congress." *Id.*

The plaintiffs argue that the Defendant Chilton County Board of Education failed or refused to plan and develop an Individualized Education Plan (IEP) for the plaintiff student. (Pl's Response, p. 24, citing to Complaint, ¶ 24). However, they fail to show that the plaintiff student is entitled to special education services under the IDEA. Furthermore, five months ago the U.S. Supreme Court placed on the plaintiff the burden of proof in an administrative hearing challenging an IEP. (This case places the burden upon the party seeking relief, here the plaintiffs*.) Shaffer v. West*, 546 U.S.


___ (Nov. 14, 2005) Case No. 04-698. The plaintiffs should be required to prove this burden in a due process hearing and a specific administrative finding be made before they can bring these claims in front of this Court.

Ignoring these deficiencies, plaintiffs then assert that the allegations in their Complaint support their argument that it would be futile for them to exhaust the IDEA's administrative procedures. (Pl.'s Response, p. 26) However, the plaintiffs have not and cannot offer any evidentiary support for this assertion. The Eleventh Circuit addressed the concept of futility in *N.B. v. Alachua Co. School Bd.*, 84 F.3d 1376 (11th Cir. 1996). In that case, the Court held that the futility argument based on the student's no longer living in the school district did not excuse the plaintiffs' failure to exhaust administrative remedies. *Id.* at 1379. "Permitting parents to avoid the requirements of the IDEA through such a "back door" would not be consistent with the legislative intent of the IDEA." *Id.* The Eleventh Circuit found the plaintiffs' second argument, that there was no point pursuing administrative remedies because the school district lacked authority to grant the money damages requested, equally unpersuasive. *Id.*

Here, the plaintiffs have failed to even specify the basis for their alleged excuse of futility. Certainly, the plaintiffs can not cite to some improper board policy or increased risk of harm to the student because the student is required to go through the exhaustion process. Clearly, if the Eleventh Circuit did not find the reasons above persuasive to allow the plaintiffs to avoid exhausting the IDEA's administrative remedies, the plaintiffs here should not be allowed the opportunity to "avoid the legislative intent of the IDEA"- to exhaust all administrative remedies before involving the court. Since the plaintiffs have failed to exhaust their administrative remedies, they should not be allowed to proceed under 42 U.S.C. § 1983 for their claims for violations of the IDEA. *Id.* Thus, the

defendants are entitled to summary judgment as to both Counts I and II of their Complaint.

## X.  THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT ("IDEA") CLAIMS.

Plaintiffs argue that the individual educators can be held liable for an alleged violation of the IDEA. (Pl.'s Response, p. 26). However, they fail to provide any case law to support this argument. The defendants provided ample case law in their Motion for Summary Judgment brief which clearly establishes that only the federal funds recipient, the Chilton County Board of Education, is able to be held liable under the IDEA, and not its employees or members. However, in this case, there is substantial evidence that the plaintiffs have failed to exhaust their administrative remedies under the IDEA, there has been no violation of the plaintiff student's rights under the IDEA and thus, the Board should not be held liable under the IDEA. Additionally, Mildred Ellison, Ann Glasscock, Alan Childress, Ann Thomas, Joe Mims, Peggy Harris, Curtis Smith, Michael Gothard, Daryl Baker, and Donnie Finlayson are entitled to summary judgment in their favor as to the plaintiffs' claims under the IDEA, including both Counts I and II of the Complaint.

## XI.  THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO THE PROTECTION OF QUALIFIED IMMUNITY.

The plaintiffs argue that the individual defendants are not entitled to qualified immunity because they claim clearly established law existed at the time of the alleged violation which established the unlawfulness of the plaintiffs' actions. (Pl.'s Response, p. 32) However, plaintiffs do not cite to any specific case which supports this claim. The plaintiff who questions the claim of qualified immunity has the burden of proof and cannot rely on general, conclusory allegations to

show that the right is clearly established. To be clearly established, "a right must be so particularized that in the light of preexisting law the unlawfulness must be apparent." *Hansen v. Soldenwagner*, 19 F.3d 573 (11th Cir. 1994).

There is no case on point from the United State Supreme Court, the Eleventh Circuit or the Alabama Supreme Court which clearly directed the defendants to act in any particular manner, which given the contours of any right possessed by the plaintiffs that these educators and board members would have understood that their acts, as alleged by the plaintiffs, were unlawful. Since the defendants provided a lengthy argument in this regard in their brief in support of their Motion for Summary Judgment, they will not repeat those same arguments here, but merely refer the Court to subheading IV in their brief. In light of the plaintiffs' failure to adequately respond to defendants' assertion that the individual defendants are protected by qualified immunity, defendants Mildred Ellison, Ann Glasscock, Alan Childress, Ann Thomas, Joe Mims, Peggy Harris, Curtis Smith, Michael Gothard, Daryl Baker, and Donnie Finlayson are entitled to summary judgment in their favor as to the plaintiffs' claims under the IDEA brought pursuant to 42 U.S.C. § 1983.

**XII.    DEFENDANT ELLISON AND THE BOARD MEMBERS ARE ENTITLED TO STATE- AGENT IMMUNITY.**

The plaintiffs argue that Superintendent Ellison and the members of the Chilton County Board of Education are not entitled to the protection of state- agent immunity because they allegedly acted "illegally, fraudulently, in bad faith, beyond the scope of their authority, or under a mistaken interpretation of the law." (Pl.'s Response, p. 36). However, the plaintiffs do not cite to any evidentiary support for these accusations. In fact, the plaintiffs fail to mention any board member at all, except fro Ann Galsscock, in their Narrative Summary of Facts. As the defendants have

shown in their narrative statement of undisputed facts and brief, there is no evidence that any defendant educator or board members acted illegally, fraudulently, in bad faith, beyond the scope of their authority or under a mistaken interpretation of the law. Plaintiffs go on to argue that claims of negligent supervision by supervisory officials are not protected by immunity. This is clearly contrary to current law in the State of Alabama. *Ex parte Cranman* specifically provides immunity from civil liability to a state agent in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's..."(2) **exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:**...**supervising personnel and educating students**...." 792 So. 2d at 405 (emphasis added). Thus, the plaintiffs have failed to meet their burden in overcoming the immunity protection provided to Alabama educators and board members.

### XIII. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE OUTRAGE CLAIMS.

The plaintiffs argue that the alleged verbal harassment of the plaintiff student and her mother by the principal and superintendent, which allegedly includes three statements, establishes a set of circumstances "which would have the potential to cause someone extreme emotional distress which no reasonable person could be expected to endure." (Pl.'s Response, p. 34). However, none of these alleged facts, either individually or taken as a whole, amount to the type of conduct that goes beyond all possible bounds of decency. Even if this Court determines that some of the actions of the educators may not have been the best exercise in judgment, it cannot be found that any of the alleged actions is so extreme or outrageous as to rise to the level of actionable conduct. The defendants are, thus, entitled to summary judgment in their favor as to the outrage claim.

## CONCLUSION

For the reasons stated above and argued in Defendants' Motion for Summary Judgment, supporting brief, Motion to Dismiss and supporting brief, and incorporateing by reference their Motion to Strike Plaintiffs' Consolidated Response in Opposition to Motion for Summary Judgment and Affidavit of Brandon Blankenship, and provide the following reply to Plaintiffs' Consolidated Response in Opposition to their Motion for Summary Judgment, all defendants are due to have summary judgment granted in their favor as to all claims against them.

Respectfully submitted,

/s/ Mark S. Boardman (ASB-8572-B65M)

/s/ Katherine C. Hortberg (ASB-5374-B34K)
BOARDMAN, CARR & HUTCHESON, P.C.
400 Boardman Drive
Chelsea, Alabama 35043-8211
(205) 678-8000
(205) 678-0000 FACSIMILE

## CERTIFICATE OF SERVICE

I hereby certify that on **April 7, 2006**, I electronically filed and sent via U.S. mail the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following :

**VIA U.S. MAIL**
George E. Jones, III
Post Office Box 9
Selma, AL 36702-0009

s/Katherine C. Hortberg
Of Counsel